611 A.2d 213

**COMMONWEALTH of Pennsylvania**

v.

**Elaine C. MEDER, Appellant.**

Superior Court of Pennsylvania.

Argued April 9, 1992.

Filed June 3, 1992.

274

Deborah T. Lux, Asst. Public Defender, Bellefonte, for appellant.

Ray G. Gricar, Dist. Atty., Bellefonte, for Com., appellee.

Before OLSZEWSKI, BECK and HOFFMAN, JJ.

OLSZEWSKI, Judge:

This is an appeal from the order of the Court of Common Pleas of Centre County dated July 23, 1991, which denied appellant's petition for a writ of *habeas corpus*.[1] Appellant filed her petition from the decision of the district justice which held her for trial. We affirm.

The charges filed against appellant are for first- and third-degree murder. The Commonwealth has alleged that appellant strangled her newborn child in October 1985. At the preliminary hearing two witnesses testified. The first witness was appellant's mother, Gloria Meder. Gloria Meder testified that in the Fall of 1985 she resided with her daughter, who was at that time nineteen years old. Gloria Meder testified that she was not aware that appellant was pregnant until after finding the cold, white, apparently dead

---

1. We note here that this appeal was taken pursuant to a grant of permission to file an interlocutory appeal dated October 21, 1991.

child in a basin on the floor beside appellant's bed. Gloria Meder testified that on the day in question, appellant had stayed home sick from work and went to bed around 11 p.m. A noise from appellant's room awakened Gloria Meder, who proceeded to appellant's room. Gloria Meder testified that she thought appellant had fallen. Appellant was assisted to the bathroom by her mother, and upon returning to the room Gloria Meder saw the baby in the basin on the floor. Gloria Meder testified that the umbilical cord was wrapped tightly around the baby's neck once and wrapped around a second time more loosely.

Gloria Meder then testified that she did not call for medical assistance, but put appellant to sleep. Then, in a bizarre set of actions, Gloria Meder took the baby and placed it in a box and placed the box in the freezer. At some point in time after this, Gloria Meder placed the baby into a wood-burning stove and burned the baby's body. The body was totally consumed by the fire.

The second witness was Investigator Michael Kenny, of the Ferguson Township Police Department. Investigator Kenny testified to incriminating statements appellant made to him in an interview. Investigator Kenny testified that he advised appellant of her *Miranda* rights and that she agreed to waive those rights. Investigator Kenny then testified that appellant told him that she had a baby, that it was born alive, and that it cried. Appellant then admitted that she strangled the baby with the umbilical cord. Appellant stated that after she strangled the baby, she placed it in a pan and passed out. When she awoke, the baby was there and she attempted to get up, but fell against the wall.

On February 28, 1991, appellant was arrested and charged with first- and third-degree murder. A preliminary hearing was held on March 6, 1991, at which time District Justice Robert Schoff dismissed both charges against appellant. On March 7, 1991, the Commonwealth filed the charges for a second time. On March 20, 1991, a second preliminary hearing was held, at which time District Justice Clifford H. Yorks ordered appellant held for court on both

counts. Appellant then filed a writ of *habeas corpus* to the Court of Common Pleas of Centre County challenging the ruling ordering appellant held for court. The writ was denied by the court of common pleas, and this timely appeal followed.

Appellant raises two issues for our consideration. First, appellant argues that the Commonwealth was required to prove *corpus delicti* before it could use appellant's confession at the preliminary hearing. In regard to this issue, appellant asks this Court to determine whether as a matter of law the Commonwealth is required to prove the *corpus delicti* at a preliminary hearing before it can use a defendant's confession. Second, appellant argues that in this case the evidence of *corpus delicti* produced by the Commonwealth is just as consistent with stillbirth, accident and/or natural causes as with criminality, and, therefore, is insufficient to prove the *corpus delicti*. We take up each of appellant's arguments below.

█ We agree with appellant's first argument that the Commonwealth was required to prove the *corpus delicti* at the preliminary hearing in order to use appellant's confession.[2] The rule of law relied upon by appellant is that:

... "an extra-judicial admission or confession of one accused of crime cannot be received in evidence unless and until the corpus delicti of the crime has first been established by independent proof." *Commonwealth v. Turza*, 340 Pa. 128, 133, 16 A.2d 401, 404 (1940).

*Commonwealth v. Davis*, 308 Pa.Super. 204, 213, 454 A.2d 92, 96–97 (1982). "Corpus delicti means the body of the crime or the fact that a crime has been committed." *Commonwealth v. Brusky*, 219 Pa.Super. 54, 56, 280 A.2d 826, 827 (1971). In a homicide case, the *corpus delicti* consists of proof "that the person for whose death the prosecution was instituted is in fact dead and that the death occurred under circumstances indicating that it was criminally

**2.** It is the modern view that the order of proof of *corpus delicti* is within the discretion of the judge. *Commonwealth v. Smallwood*, 497 Pa. 476, 442 A.2d 222 (1982).

caused by *someone." Commonwealth v. Davis,* 308 Pa.Super. at 213, 454 A.2d at 97 (quoting *Commonwealth v. Turza,* 340 Pa. at 134, 16 A.2d at 404).

■ The initial question which arises in this case is whether the rule cited above should apply to a preliminary hearing. For the reasons which follow, we believe the rule does apply.

The distinction between a preliminary hearing and the trial itself is well settled. While a trial determines guilt or innocence, the "preliminary hearing is held primarily to prevent the detention of a person for a crime which was never committed or of a crime with which there is no evidence of his connection."

\* \* \* \* \* \*

The question at a preliminary hearing is not whether there is sufficient evidence to prove the defendant guilty beyond a reasonable doubt; rather, the question is whether the prosecution must be dismissed because there is nothing to indicate that the defendant is connected with a crime.

*Commonwealth v. Rick,* 244 Pa.Super. 33, 36, 366 A.2d 302, 303–304 (1976). The *corpus delicti* rule is a rule of evidence. *Commonwealth v. May,* 451 Pa. 31, 301 A.2d 368 (1973). It has been held that the law of evidence is often relaxed at a preliminary hearing. *Commonwealth v. Davis,* 308 Pa.Super. at 213, 454 A.2d at 97. The question here is whether the law of evidence is so relaxed at a preliminary hearing so as to allow the use of a confession without proof of the *corpus delicti* of the crime charged.

We have found no caselaw that specifically states whether or not the *corpus delicti* must be shown at a preliminary hearing before a confession may be used. Two decisions of this Court have dealt with proof of *corpus delicti* at a preliminary hearing. *Commonwealth v. Davis; Commonwealth v. Taylor,* 219 Pa.Super. 334, 280 A.2d 405 (1971). In *Davis,* appellant argued that the district justice erred by allowing incriminating statements prior to proof of *corpus delicti.* The Court in *Davis* responded that there is no

strict order of proof, rather the order of proof is within the discretion of the judge or, in that case, the district justice. Further, in *Davis* appellant argued that the district justice erred in allowing proof of the death of the victim by the use of a hearsay autopsy report. The court found no difficulty with proving the *corpus delicti* at the preliminary hearing through the use of hearsay.

In *Taylor*, the Court held that where a defendant was not represented by counsel at a preliminary hearing and the prosecution failed to prove the *corpus delicti* at the preliminary hearing, the defendant was entitled to a new trial. *Taylor* involved a charge of rape, and from the testimony reproduced in the opinion it can be seen that there was no proof of penetration at the preliminary hearing. The Court in *Taylor* found that, in light of the lack of evidence of *corpus delicti*, counsel at the preliminary hearing would have likely resulted in a dismissal of the charge of rape.

■ While neither *Davis* nor *Taylor* specifically sets forth black letter law stating that the *corpus delicti* must be proven at the preliminary hearing, we find that such a rule is implicit in these cases. We find that proof of the *corpus delicti* of the crime must be proven at a preliminary hearing in order to allow the use of confessions or incriminating statements. We find further support for our holding in that the purpose of a preliminary hearing is, in part, to assure that a person is not detained for a crime that was never committed. *Commonwealth v. Rick.* Requiring the Commonwealth to establish the *corpus delicti* assures that there is some evidence that a crime was committed.[3]

Appellant's second argument is that the evidence the Commonwealth produced at the preliminary hearing was just as consistent with stillbirth, accident and/or natural causes as with criminality, and, therefore, is insufficient to

**3.** We note here that our decision in this case in no way impacts on the means by which the Commonwealth may establish the *corpus delicti*. The decision here merely states that proof of the *corpus delicti* must be produced at the preliminary hearing in order to allow the use of incriminating statements or a confession.

establish the *corpus delicti* for murder. Examining the evidence presented the question becomes whether the testimony of appellant's mother, Gloria Meder, is sufficient to establish the *corpus delicti.* We agree with the court of common pleas that the testimony of appellant's mother is sufficient to establish the *corpus delicti.*

As was stated above, the *corpus delicti* in a homicide case consists of proof "that the person for whose death the prosecution was instituted is in fact dead and that the death occurred under circumstances indicating that it was criminally caused by *someone." Commonwealth v. Davis,* 308 Pa.Super. at 213, 454 A.2d at 97 (quoting *Commonwealth v. Turza,* 340 Pa. at 134, 16 A.2d at 404). We believe that some analysis of the Commonwealth's burden of proof is required.

Thus, the rule requires the Commonwealth must sustain an initial burden of proof by preliminarily establishing to the satisfaction of the trial judge that the death occurred under circumstances which were *more consistent* with criminality than with natural causes or accident. Once the Commonwealth has sustained this initial and preliminary burden of proof, which is admittedly slight, the admissions of the accused become admissible. It is for the trial judge to decide whether the Commonwealth has sustained the burden of preliminarily establishing the corpus delicti. This preliminary burden of proof must be distinguished from the Commonwealth's *ultimate* burden of proof, namely, the requirement that it establish beyond a reasonable doubt each and every element of the crime to the satisfaction of the fact-finder.

*Commonwealth v. Fried,* 327 Pa.Super. 234, 239–40, 475 A.2d 773, 775 (1984). To prove *corpus delicti,* the Commonwealth need not prove each element of the crime charged beyond a reasonable doubt. Rather, the Commonwealth merely must establish that a crime was committed. In *Commonwealth v. Ware,* 459 Pa. 334, 329 A.2d 258 (1974), the Pennsylvania Supreme Court explained what is required to establish *corpus delicti* in a homicide case.

The first element that a human being is in fact dead, rarely presents difficulty. But proof of the second element—that death "occurred through a criminal agency,"—frequently is disputed. Often the circumstances of death are such that homicide cannot be established absent the statements of the accused as the cause of death to the exclusion of the accident or suicide. Accordingly, we have held that the corroboration policy is satisfied if the independent evidence "points to an unlawful killing, although it may indicate as well accident or suicide," or " 'where the circumstances attending the death are consistent with crime, though they may also be consistent with accident ... or suicide.' " Although corroboration is insufficient if the independent evidence is equally consistent with accident or criminality, "the prosecution has no duty to affirmatively exclude the possibility of accident or suicide in order to establish the corpus delicti."

*Commonwealth v. Ware*, 459 Pa. at 366–67, 329 A.2d at 274–275 (citations omitted, footnote omitted). Applying the above factors to this case, we find the Commonwealth established the *corpus delicti* for murder at the preliminary hearing.

The first element which must be satisfied is that the person upon whose death the prosecution is based, is in fact dead. The reason for the death is the second element. In this case, the testimony of Gloria Meder established at a minimum that she found a cold, white body of a baby in a pan at the side of appellant's bed. Certainly this establishes that the person upon whose death the prosecution was commenced is dead.

Appellant has put forth a strained argument that there was no proof presented that the child was born alive, independent of her confession, and, therefore, the first element that a person is dead was not established. We believe appellant's argument confuses the elements of *corpus delicti* for a homicide prosecution. The first element is that the person is actually dead. Whether this child died as a result of accident or wrong doing is not a part of the first element. Further, we see an opportunity to be led by

appellant into an argument that this child was not born alive, and, therefore, was not a person who could die. This we refuse to do. The reason for the death and the circumstances surrounding the death may vindicate or condemn appellant, but we will not accept an argument that this full-term infant was not a person. The Commonwealth established that the person upon whose death the prosecution was based is actually dead for purposes of the *corpus delicti* rule.

█ The second element the Commonwealth is required to establish is that the death occurred under circumstances that indicate that it was criminally caused by someone. The Commonwealth need not establish a connection to appellant in order to establish *corpus delicti*, although to establish a *prima facie* case the Commonwealth is required to show a connection between appellant and the crime. Appellant has argued here that the evidence presented at the preliminary hearing, independent of her confession, is equally consistent with stillbirth, accident and/or natural causes as with criminal activity. Appellant argues that because the testimony is equally as consistent with non-criminal activity as with criminal activity, the evidence is insufficient to establish the *corpus delicti*. We do not agree.

█ It has been said that the independent evidence of *corpus delicti* is insufficient if it is merely as consistent with criminal activity as with non-criminal activity. *Commonwealth v. Leslie*, 424 Pa. 331, 227 A.2d 900 (1967). It is clear, however, that the Commonwealth has no affirmative duty to disprove the possibility that the death was not the result of criminal activity. *Commonwealth v. May.* The Commonwealth need not establish that the death was not the result of accident prior, during, or after birth. All the Commonwealth need demonstrate, independently of the confession or incriminating statements, is that the death occurred under circumstances that indicate criminal activity. Once this is shown, the confession or incriminating statements are admissible.

In this case we do not find that the circumstances, as shown by the evidence, were equally consistent with accident as with criminal activity. The evidence independent of the confession is limited to the testimony of appellant's mother, Gloria Meder. Although the evidence is only the testimony of a single witness, it is very revealing and extremely indicative of criminal activity. First, Gloria Meder testified she found a cold, white, apparently dead baby in a pan at the side of her daughter's bed. Gloria Meder's testimony reveals that the baby had the umbilical cord wrapped once tightly around its neck and a second time more loosely. The umbilical cord being wrapped around a dead child's neck indicates two possibilities: either it was caught there accidently, or it was purposely wrapped around the neck. This alone might lead to a conclusion that the circumstances are just as consistent with crime as with accident. The testimony of Gloria Meder reveals much more than that the baby's body had the cord wrapped around its neck. Gloria Meder testified that although she lived with her daughter during this time, she never knew her daughter was pregnant. It is difficult to understand how this is possible. Gloria Meder testified that the child weighed six to seven pounds. It is hard to envision concealing a pregnancy from the people one resides with until the child has reached a weight of six pounds. Further, the actions of Gloria Meder are certainly consistent with concealment of criminal activity. It requires a considerable motive for a person to freeze and burn a body, even the small body of an infant. Also, Gloria Meder's daughter had apparently just delivered a child and was ill, but Gloria Meder never called for medical or other assistance. These circumstances indicate criminal activity more than an accident or natural causes. To the extent that these circumstances are consistent with an accident, the Commonwealth has no duty to disprove that possibility.

For the foregoing reasons, the order of the court of common pleas is affirmed.

Order affirmed.