[No. B181214. Second Dist., Div. Eight. Oct. 6, 2005.]

SUAD SALIM RAYYIS, Petitioner, v.
THE SUPERIOR COURT OF LOS ANGELES COUNTY, Respondent;
THE PEOPLE, Real Party in Interest.

COUNSEL

Law Offices of Richard A. Moss, Richard A. Moss and Jerry B. Marshak for Petitioner.

No appearance for Respondent.

Steve Cooley, District Attorney, Brent Riggs, Brentford Ferreira and Hyman Sisman, Deputy District Attorneys, for Real Party in Interest.

## OPINION

**COOPER, P. J.**—Like most American jurisdictions, California adheres to the "corpus delicti" rule, under which the corpus delicti—essentially, the fact that a crime has been committed—cannot be proved based solely on extrajudicial statements of the defendant. (*People v. Alvarez* (2002) 27 Cal.4th 1161, 1169, 1173 [119 Cal.Rptr.2d 903, 46 P.3d 372] (*Alvarez*).) Over the years, courts have consistently applied this rule not only to the actual trial of a defendant, but also to the preliminary hearing where it must be determined if sufficient evidence has been presented to hold the defendant to answer.

In this case, however, the trial court concluded the corpus delicti rule no longer applies to preliminary hearings in light of the Supreme Court's decision in *Alvarez, supra*, 27 Cal.4th 1161, which construed the effect of the passage of Proposition 8 in 1982 on the corpus delicti rule. In light of that determination, the trial court denied petitioner's motion to set aside the counts in the information charging petitioner with money laundering and filing false income tax returns.

We hold that in reaching its conclusion, the trial court erred. Nothing in Proposition 8 or in *Alvarez* suggests the corpus delicti rule was abrogated in the preliminary hearing context. We also hold that, with respect to the counts alleging petitioner filed false tax returns, the error was harmless as there was sufficient evidence, aside from petitioner's extrajudicial statements, to satisfy the corpus delicti rule as to these counts. However, with respect to the money laundering counts, the error was prejudicial. Accordingly, we grant the petition with respect to the money laundering counts only.

## FACTUAL AND PROCEDURAL BACKGROUND[1]

Petitioner Suad Salim Rayyis is a doctor. In 1978, Rayyis, his wife, and at least two of their children (twin brothers currently in their mid-30's) moved into a home in San Marino. (All references to Rayyis are to the petitioner.) Except for a brief period after Rayyis and his wife legally separated, Rayyis lived in the San Marino home continuously until his arrest on the charges at issue in this case.

As discussed below, Rayyis was the main source of income for his family. However, major assets, such as the family home and the family's five cars, are not held in Rayyis's name. Rayyis's wife is the sole titleholder of the San Marino home. The family's five cars, including one driven by Rayyis, are held in the names of his twin children.

Rayyis did not file any income tax returns from 1985 until after the filing of the criminal complaint in this action in 2004. However, it is clear he had considerable income during much of this time. Thus, between 1998 and 2002, over $4 million was deposited into two of Rayyis's bank accounts.

During the time Rayyis was receiving all this money, he transferred considerable sums to his family in the form of checks made out to his twin children. Among other things, he (1) transferred $4,500 each month to cover living expenses, including the monthly mortgage payment; (2) gave each twin $100,000 as a gift when they received their undergraduate degrees, and an

---

[1] The facts discussed below are based on evidence presented at the preliminary hearing.

additional $30,000–$35,000 when they received graduate degrees; (3) gave each twin approximately $30,000–$40,000 so they could pay off their student loans; (4) gave the twins money to purchase five cars, including a $100,000 Mercedes Benz he insisted the twins purchase; and (5) gave the twins $60,000–$90,000 for the remodeling of the San Marino home.

It is also clear that the family's lifestyle has been supported almost exclusively by money from Rayyis. Rayyis's wife has not worked outside the home for at least 10 years. Previously, she worked part-time at Pasadena City College and did not make substantial amounts of money. The twins worked part-time while going to school. Currently, they each earn approximately $30,000–$45,000 a year working part-time as managers for a supermarket chain.

In February 2004, law enforcement officials executed a search warrant at Rayyis's residence and at one or more offices where Rayyis practiced medicine. At that time, an investigator for the district attorney's office interviewed Rayyis. During the interview, Rayyis stated that he had been involved with staged automobile accident cases from approximately 1995 until 2003. He described how "hunters" found people to stage accidents and then come in for medical treatment.

During this search and on other occasions, evidence was also found suggesting Rayyis may have violated various labor laws (such as failure to pay workers' compensation benefits and to maintain proper records of employee wages).

In August 2004, a felony complaint was filed against Rayyis. It contained 22 counts as follows: (1) five felony counts of willful failure to file an income tax return (for the years 1998 through 2002) (Rev. & Tax. Code, § 19706); (2) 13 felony counts of money laundering (at various times between August 2001 and December 2003) (Pen. Code, § 186.10, subd. (a)); (3) one misdemeanor count of failure to maintain records of employee wages (Lab. Code, § 226); (4) two misdemeanor counts of failure to secure payment of workers' compensation (Lab. Code, § 3700.5); and (5) one misdemeanor count of failure to observe a stop order (Lab. Code, § 3710.1).

The following month, Rayyis filed tax returns for the years 1998–2002. In November 2004, the People filed an amended complaint, adding five felony counts of filing a false income tax return (Rev. & Tax. Code, § 19705, subd. (a)(1)).

At the preliminary hearing, the district attorney investigator who spoke with Rayyis when Rayyis's office was searched testified about the statements

Rayyis had made concerning his involvement in staged automobile accident cases. The People concede that aside from this testimony describing Rayyis's extrajudicial statements, no evidence was presented at the preliminary hearing suggesting that Rayyis was involved in insurance fraud.

In addition, a senior special agent for the Franchise Tax Board testified about his analysis of Rayyis's bank records and tax returns. Among other things, the special agent testified that he analyzed records of Rayyis's bank accounts for the years 1998–2002 and the tax returns Rayyis filed after the initiation of this criminal proceeding. The special agent testified that, based on his analysis of the bank records, he determined that Rayyis received $4,049,601 in income during the years 1998–2002. He then compared this figure (as well as the figures for the individual years) with the income figures contained in Rayyis's tax returns and concluded that Rayyis had underreported his income.

The special agent concluded that for the years 1998 through 2002, Rayyis had underreported his tax liability by $199,207. Although the special agent's testimony is not a model of clarity, it appears that this figure is based on two factors. First, it is based in part on the underreporting of income, which has nothing to do with the alleged insurance fraud. Second, it is based in part on the special agent's conclusion that Rayyis was not entitled to deductions in connection with his medical practice because he had engaged in insurance fraud.[2] Thus, it appears the special agent's conclusion that Rayyis had underreported his tax liability was not dependent solely on a determination that Rayyis had engaged in insurance fraud.

At the conclusion of the preliminary hearing, Rayyis was held to answer on all counts.

After his superior court arraignment, Rayyis filed a motion under Penal Code section 995 to set aside the information for lack of probable cause. Among other things, Rayyis argued that the money laundering and false tax return counts hinge on his alleged participation in insurance fraud and that, aside from his extrajudicial statements to the district attorney investigator, no evidence was presented at the preliminary hearing to suggest he participated in such fraud. He then argued that, based on the corpus delicti rule, he should not have been held to answer.

---

[2] Section 17282, subdivision (a) of the Revenue and Taxation Code provides: "In computing taxable income, no deductions (including deductions for cost of goods sold) shall be allowed to any taxpayer on any of his or her gross income directly derived from illegal activities . . . ; nor shall any deductions be allowed to any taxpayer on any of his or her gross income derived from any other activities which directly tend to promote or to further, or are directly connected or associated with, those illegal activities."

In opposition, the People, relying on the Supreme Court's decision in *Alvarez, supra*, 27 Cal.4th 1161, argued that the corpus delicti rule was abrogated by Proposition 8, except to the extent that a criminal *conviction* may not be based solely on a defendant's extrajudicial statement.

At the conclusion of the hearing, the trial court agreed with the People's position and denied the motion insofar as it challenged the money laundering and false tax return claims.[3] The court also noted that, even if the corpus delicti rule applied, there may have been enough independent evidence of the crimes to satisfy the requirements of the rule. However, the court made clear that it was not making such a determination and that its decision to deny Rayyis's motion to dismiss the money laundering and false tax return counts was based solely on its conclusion that *Alvarez* abrogated the corpus delicti rule insofar as preliminary hearings are concerned.

Rayyis filed this writ petition challenging the trial court's decision on the money laundering and false tax return charges. We issued an order to show cause, received additional briefing, and heard oral argument.

## DISCUSSION

### 1. *The Corpus Delicti Rule Applies to Preliminary Hearings.*

#### a. *The Corpus Delicti Rule.*

The corpus delicti rule is a common law rule developed by courts over the years. (*Alvarez, supra*, 27 Cal.4th at pp. 1169, 1173.) It has been applied in California since at least the 1860's. (*Id.* at p. 1169.)

■ Under the rule, "the prosecution must prove the corpus delicti, or the body of the crime itself—i.e., the fact of injury, loss, or harm, and the existence of a criminal agency as its cause. In California, it has traditionally been held, the prosecution cannot satisfy this burden by relying *exclusively* upon the extrajudicial statements, confessions, or admissions of the defendant." (*Alvarez, supra*, 27 Cal.4th at pp. 1168–1169.)

■ The amount of additional proof that is required to satisfy the corpus delicti rule is fairly minimal. The Supreme Court has described "this quantum of [additional] evidence [that is required] as 'slight' [citation] or 'minimal' [citation]. The People need make only a prima facie showing ' "permitting

---

[3] The court granted the motion with respect to the counts alleging failure to maintain records of employee wages, failure to secure payment of workers' compensation, and failure to observe a stop order.

the reasonable inference that a crime was committed." ' [Citation.] The inference need not be 'the only, or even the most compelling, one . . . [but need only be] a *reasonable* one . . . .' " (*People v. Jones* (1998) 17 Cal.4th 279, 301–302 [70 Cal.Rptr.2d 793, 949 P.2d 890], ellipses and last brackets in *Jones*.) "Such independent proof may consist of circumstantial evidence [citations], and need not establish the crime beyond a reasonable doubt [citation]." (*Id.* at p. 301.)

"The purpose of the corpus delicti rule is to assure that 'the accused is not admitting to a crime that never occurred.' [Citation.] The rule arose because of the law's unease with inflicting punishment when a 'confession may have been misreported or misconstrued, elicited by force or coercion, based upon mistaken perception of the facts or law, or falsely given by a mentally disturbed individual. [Citations.] Thus, it is clear that the corpus delicti rule was established to prevent not only the possibility that a false confession was secured by means of police coercion or abuse but also the possibility that a confession, though voluntarily given, is false.' [Citation.]" (*People v. Jones*, *supra*, 17 Cal.4th at p. 320 (conc. opn. of Mosk, J.); see also *Jones v. Superior Court* (1979) 96 Cal.App.3d 390, 397 [157 Cal.Rptr. 809] ["Today's judicial retention of the rule reflects the continued fear that confessions may be the result of either improper police activity or the mental instability of the accused, and the recognition that juries are likely to accept confessions uncritically"].)

### b. *Courts Uniformly Apply the Rule to Preliminary Hearings.*

Over the years, California courts have consistently applied the corpus delicti rule not only to trials, but also to preliminary hearings. For example, in *In re Schuber* (1945) 68 Cal.App.2d 424 [156 P.2d 944], the Court of Appeal issued a writ of habeas corpus after concluding that aside from the defendant's extrajudicial statements, there was no evidence to establish the corpus of the crime charged. The court rejected the notion that the corpus delicti rule should not apply to preliminary hearings. Among other things it stated: "While it is true that preliminary examinations of persons accused of crime when held before a committing magistrate are usually less formal in matters of procedure than would be required upon the trial of the cause the essential principles of procedure and of evidence may not be departed from by committing magistrates in the conduct of such examinations [citation], and although the committing magistrate may hold a defendant to answer upon evidence which would not support a verdict of guilty, nevertheless there must be some evidence tending to show the commission of the crime charged

before a defendant's admission or confession can be introduced for any purpose."[4] (*Id.* at pp. 425–426.)

Our Official Reports contain a host of other cases in which appellate courts have granted relief because the requirements of the corpus delicti rule were not met at the preliminary hearing. (See, e.g., *Creutz v. Superior Court* (1996) 49 Cal.App.4th 822, 826 [56 Cal.Rptr.2d 870] [court observes that "[t]he [corpus delicti] rule applies to preliminary hearings" and grants petition for writ of prohibition because rule not satisfied at preliminary hearing];[5] *Jones v. Superior Court, supra,* 96 Cal.App.3d 390 [court grants petition for writ of prohibition]; *Iiams v. Superior Court* (1965) 236 Cal.App.2d 80, 84 [45 Cal.Rptr. 627] [court grants petition for writ of prohibition after concluding that "[a]bsent the extrajudicial statements by petitioner, . . . the evidence at the preliminary hearing did not establish some rational ground for assuming the possibility that the offenses charged in the subject information had occurred. As a consequence, petitioner was committed without reasonable or probable cause"]; *In re Flodstrom* (1954) 134 Cal.App.2d 871, 875 [277 P.2d 101] [court grants petition for writ of habeas corpus after concluding that "the corpus delicti has not been established [at the preliminary hearing]. Disregarding the confession and admissions of the accused there is no proof, even slight, of any criminal agency that caused the death of the infant child"].)

In addition, there are numerous decisions affirming orders setting aside an information because the corpus delicti rule had not been satisfied at the preliminary hearing. (E.g., *People v. Martinez* (1972) 27 Cal.App.3d 131 [103 Cal.Rptr. 451]; *People v. Davidson* (1964) 227 Cal.App.2d 331 [38 Cal.Rptr. 660].)

Finally, there are numerous decisions applying the corpus delicti rule to preliminary hearings, only to conclude that the rule had been satisfied. (E.g., *Matthews v. Superior Court* (1988) 201 Cal.App.3d 385 [247 Cal.Rptr. 226];

---

[4] As discussed below (see *post,* pp. 147–148, & fn. 7), the Supreme Court in *Alvarez, supra,* 27 Cal.4th 1161, held that it is no longer necessary to introduce independent evidence of the corpus delicti before an accused's extrajudicial statements may be admitted. Therefore, the statement in *In re Schuber, supra,* 68 Cal.App.2d at pages 425–426, regarding the admissibility of evidence under the corpus delicti rule, as well as some statements regarding the corpus delicti rule or its application in other cases discussed in this section, may no longer be valid. However, the significance of the cases discussed in this section is not in the *manner* in which they apply the corpus delicti rule, but in the very fact that they apply the rule to preliminary hearings.

[5] In *Creutz v. Superior Court, supra,* 49 Cal.App.4th at page 833, footnote 9, the court also observed that the People's "argument that the rulings of the trial court and the magistrate should be reviewed under the deferential 'some rational ground' standard . . . must fail. While this standard is appropriate for appellate review of decisions on the sufficiency of the evidence adduced at a preliminary hearing, it has no relevance whatsoever to the determination of whether the corpus delicti has been established" at the preliminary hearing.

*People v. Andrews* (1963) 222 Cal.App.2d 242 [35 Cal.Rptr. 118]; *People v. Sheeley* (1957) 151 Cal.App.2d 611, 612–613 [311 P.2d 883]; see also *People v. Sally* (1993) 12 Cal.App.4th 1621, 1627–1628 [16 Cal.Rptr.2d 161] [corpus delicti rule not satisfied at the preliminary hearing, but defendant waived the right to rely on the rule because he failed to raise it in the trial court].)

To date, no appellate court has declared that the corpus delicti rule does *not* apply to preliminary hearings.

### c. *Alvarez Did Not Abrogate the Corpus Delicti Rule in the Preliminary Hearing Context.*

In *Alvarez, supra,* 27 Cal.4th 1161, the Supreme Court was called upon to decide whether the corpus delicti rule was abrogated by Proposition 8, which voters approved in 1982 and which resulted in the addition of article I, section 28, to the California Constitution. Subdivision (d) of this section (hereafter section 28(d))—the Right to Truth-in-Evidence provision—provides that with certain exceptions, "relevant evidence shall not be excluded in any criminal proceeding . . . ."[6]

The Supreme Court went on to hold that Proposition 8 did abrogate the corpus delicti rule, but only in one respect—it "abrogate[ed] any corpus delicti basis for excluding the defendant's extrajudicial statements from evidence." (*Alvarez, supra,* 27 Cal.4th at p. 1165; see also *id.* at p. 1174 ["insofar as the corpus delicti rule restricts the admissibility of incriminatory extrajudicial statements by the accused, section 28(d) abrogates it"]; *id.* at p. 1177 ["insofar as the corpus delicti rule has directly barred or restricted the *admissibility in evidence* of otherwise relevant and admissible extrajudicial statements of the accused, on grounds that independent proof of the crime is lacking, the rule has been abrogated by section 28(d). Under this constitutional provision, a corpus delicti objection to the *introduction* of defendant's statements is no longer valid as such" (second italics added)].)[7]

---

[6] Section 28(d) provides in full: "Except as provided by statute hereafter enacted by a two-thirds vote of the membership in each house of the Legislature, relevant evidence shall not be excluded in any criminal proceeding, including pretrial and post conviction motions and hearings, or in any trial or hearing of a juvenile for a criminal offense, whether heard in juvenile or adult court. Nothing in this section shall affect any existing statutory rule of evidence relating to privilege or hearsay, or Evidence Code, Sections 352, 782 or 1103. Nothing in this section shall affect any existing statutory or constitutional right of the press."

[7] Prior to *Alvarez,* courts construed the corpus delicti rule as requiring the prosecution to present evidence of the corpus independent of the defendant's extrajudicial statements before those extrajudicial statements could be admitted into evidence. (See *Alvarez, supra,* 27 Cal.4th at p. 1170 ["the defendant's extrajudicial statements have been deemed *inadmissible* over a corpus delicti objection absent some independent evidence of the crime to which the

■ However, the court made it absolutely clear that the corpus delicti rule was not abrogated in any other respect: "to the extent the corpus delicti rule limits the admission of relevant evidence, Proposition 8 *does entirely abrogate* the rule, including any limitation on the admission of preoffense statements. On the other hand, because Proposition 8 speaks only to the admissibility of relevant evidence, *it can have no other limiting effect on the corpus delicti rule.*" (*Alvarez, supra,* 27 Cal.4th at p. 1171, fn. 6, second italics added.) The court emphasized that "the language of section 28(d) does not address issues of *corroboration, burden of proof, or sufficiency of proof.* Though section 28(d) broadly eliminates rules that *exclude* relevant evidence from a criminal trial, the words of the constitutional provision do not speak beyond that subject. 'By its terms, the Truth-in-Evidence provision [Proposition 8] affects only the *admissibility* of evidence . . . .' [Citation.] The words of section 28(d) do not mention the corpus delicti rule by name, nor do they purport to affect any rule by which evidence, otherwise admissible, must be independently corroborated." (*Id.* at p. 1178, ellipsis in *Alvarez,* first italics added; see also *People v. Chan* (2005) 128 Cal.App.4th 408, 419 [26 Cal.Rptr.3d 878] ["Until the adoption of California Constitution article I, section 28, subdivision (d), there were two aspects to the corpus delicti rule. The first aspect involved the admissibility of evidence. Prior to the 1982 constitutional amendment, evidence of an accused's admission or confession was inadmissible in the face of a corpus delicti objection absent some independent proof of the criminal conduct. [Citations.] However, the Supreme Court has held that the admissibility of evidence rule was abrogated by the adoption of the Truth-in-Evidence provisions of article I, section 28, subdivision (d) of the California Constitution in 1982. [Citations.] The second aspect of the corpus delicti rule, which involves the sufficiency of the evidence as well as related instructional matters at issue in this case, remains in effect notwithstanding the Truth-in-Evidence provisions of California Constitution, article I, section 28, subdivision (d)"].)

Thus, *Alvarez* changes nothing when it comes to application of the corpus delicti rule to preliminary hearings (except that there is no longer any basis to exclude a defendant's extrajudicial statements from evidence). Moreover, there is nothing in the language of section 28(d)—the constitutional provision at issue in *Alvarez*—that could be construed as affecting only preliminary hearings. To the extent section 28(d) affected application of the corpus delicti rule at trial, it affected its application at preliminary hearings, no more and no less.

In concluding that *Alvarez* abrogated the corpus delicti rule in the context of preliminary hearings, the trial court in this case focused on the fact that the

---

statements relate"]; *id.* at p. 1165 ["The defendant may object to the *admission* of his extrajudicial statements on grounds that independent proof of the corpus delicti is lacking"].)

*Alvarez* opinion contains several references to the corpus delicti rule as barring a "conviction" based solely on a defendant's extrajudicial statements. (See *Alvarez, supra,* 27 Cal.4th at p. 1165 ["section 28(d) *did not* abrogate the corpus delicti rule insofar as it provides that every *conviction* must be supported by some proof of the corpus delicti *aside from* or *in addition to* such statements, and that the jury must be so instructed"]; *id.* at p. 1178 ["the independent-proof rule 'essentially precludes *conviction* based solely on a defendant's out-of-court statements' "]; *id.* at pp. 1179–1180 ["section 28(d) does not address, expressly or implicitly, any substantive rule that a *conviction* requires some proof, aside from the accused's statements, of the corpus delicti, and that the jury must be so instructed"].) However, we do not believe this occasional reference to a conviction was meant to signal that the court intended to hold the corpus delicti rule no longer applies to preliminary hearings. Indeed, the propriety of applying the corpus delicti rule to preliminary hearings was not at issue in the case.[8]

Although the Supreme Court in *Alvarez* did not purport to declare that the corpus delicti rule does not apply to preliminary hearings, we recognize that the court has not endorsed the numerous decisions (discussed in the previous part) applying the rule to such hearings.[9] However, until the Supreme Court decides that the corpus delicti rule should not apply to preliminary hearings, we are not willing to turn our backs on a long and unbroken line of cases that have applied the rule to preliminary hearings.

Applying the rule to preliminary hearings does not impose an undue burden on the prosecution. As discussed above, the amount of additional evidence that is required to satisfy the corpus delicti rule (aside from the defendant's extrajudicial statements) is "slight" or "minimal."

Moreover, "in that the purpose of a preliminary hearing is, in part, to assure that a person is not detained for a crime that was never committed[,] . . . [r]equiring the [People] to establish the *corpus delicti* [without relying solely on the defendant's extrajudicial statements] assures that there is some evidence that a crime was committed." (*Com. v. Meder* (1992) 416 Pa.Super. 273, 279 [611 A.2d 213, 216], citation and fn. omitted.)

In light of the above, we conclude the trial court erred in concluding that *Alvarez* abrogated the corpus delicti rule. We now consider whether the ruling

---

[8] *Alvarez* arose out of a conviction after a trial. It did not concern the sufficiency of evidence presented at the preliminary hearing.

[9] Indeed, in *People v. Jones, supra,* 17 Cal.4th at page 300, the court made it a point to note that it was not reviewing the holding in *Jones v. Superior Court, supra,* 96 Cal.App.3d at page 393, that the rule applies to preliminary hearings. (See also *Alvarez, supra,* 27 Cal.4th at p. 1170, fn. 4 [court cites its statement in *People v. Jones, supra,* 17 Cal.4th at p. 300, that it was not deciding whether the corpus delicti rule applies to preliminary hearings].)

was prejudicial, i.e, whether sufficient independent evidence was presented at the preliminary hearing to support the money laundering and false tax return counts in the information.[10]

## 2. The Prosecution Presented Sufficient Independent Evidence to Support the False Income Tax Return Charges, but Not the Money Laundering Charges.

### a. The Standard of Review.

■ "Evidence that will justify a prosecution need not be sufficient to support a conviction. [Citations.] ' "Probable cause is shown if a man of ordinary caution or prudence would be led to believe and conscientiously entertain a strong suspicion of the guilt of the accused." ' [Citations.] An information will not be set aside or a prosecution thereon prohibited if there is some rational ground for assuming the possibility that an offense has been committed and the accused is guilty of it." (*Rideout v. Superior Court* (1967) 67 Cal.2d 471, 474 [62 Cal.Rptr. 581, 432 P.2d 197].)

■ "In reviewing a denial of a [Penal Code] section 995 motion to dismiss, an appellate court must draw every legitimate inference from the evidence in favor of the information. [Citation.] If there is some evidence to support the information, [the appellate court] may not inquire into its sufficiency." (*Sea Horse Ranch, Inc. v. Superior Court* (1994) 24 Cal.App.4th 446, 454 [30 Cal.Rptr.2d 681].)

■ " '[A]lthough there must be *some* showing as to the existence of each element of the charged crime [citation] such a showing may be made by means of circumstantial evidence supportive of reasonable inferences on the part of the magistrate.' " (*People v. Superior Court (Jurado)* (1992) 4 Cal.App.4th 1217, 1226 [6 Cal.Rptr.2d 242], brackets in original.)

---

[10] As noted above, the trial court observed that, even if the corpus delicti rule applied, there may have been enough independent evidence of the crimes to satisfy the requirements of the rule. However, the court did not actually decide the issue.

In theory, we could remand to the trial court to consider the matter. However, because the issue is purely one of law which we would be reviewing de novo, nothing would be gained by remanding for this purpose. (See *People v. Laiwa* (1983) 34 Cal.3d 711, 718 [195 Cal.Rptr. 503, 669 P.2d 1278] ["in proceedings under [Penal Code] section 995 it is the magistrate who is the finder of fact; the superior court . . . sits merely as a reviewing court; it must draw every legitimate inference in favor of the information, and cannot substitute its judgment as to the credibility or weight of the evidence for that of the magistrate. [Citation.] On review by appeal or writ, moreover, the appellate court in effect disregards the ruling of the superior court and directly reviews the determination of the magistrate holding the defendant to answer"].)

b.  *The False Income Tax Return Counts.*

Any person who "[w]illfully makes and subscribes any return, statement, or other document, that contains or is verified by a written declaration that it is made under penalty of perjury, and he or she does not believe to be true and correct as to every material matter" is guilty of a felony. (Rev. & Tax. Code, § 19705, subd. (a)(1).)

As discussed above, the Franchise Tax Board's special agent testified that, based on his analysis of Rayyis's bank and tax records, he concluded that Rayyis had underreported his income in his tax returns.[11] Thus, there was evidence that the returns contained information that was not true. The only question is whether there was any evidence that could support a determination (for preliminary hearing purposes) that Rayyis did not believe this information was not true.

The record contains no direct evidence that Rayyis knew he was filing tax returns which included false information. However, there is some circumstantial evidence raising at least a "strong suspicion" that Rayyis knowingly underreported his income. As discussed above, Rayyis did not file any tax returns from 1984 until after the filing of this criminal action against him in 2004. During this time, he appeared intent on creating the impression that he did not have considerable assets. Thus, he did not hold title to the family home or to any of the five family cars, including the relatively modest one he drove (a Toyota Camry). He also transferred substantial sums of money—which were designed in part to cover routine family expenses—in an unusual manner. In light of these facts, it is not unreasonable to assume that when Rayyis included false figures in the tax returns he apparently felt compelled to file after the initiation of criminal proceedings against him, he knew what he was doing. This evidence was enough to survive a Penal Code section 995 motion to dismiss.

c.  *The Money Laundering Counts.*

Penal Code section 186.10, subdivision (a), provides in pertinent part: "Any person who conducts or attempts to conduct a transaction or more than one transaction within a seven-day period involving a monetary instrument or instruments of a total value exceeding five thousand dollars ($5,000), or a total value exceeding twenty-five thousand dollars ($25,000) within a 30-day period, through one or more financial institutions (1) with the specific intent

---

[11] As also discussed above, the special agent's conclusion was not dependent solely on the assumption that Rayyis had engaged in insurance fraud.

to promote, manage, establish, carry on, or facilitate the promotion, management, establishment, or carrying on of any criminal activity, or (2) knowing that the monetary instrument represents the proceeds of, or is derived directly or indirectly from the proceeds of, criminal activity, is guilty of the crime of money laundering."

As used in this section, " '[c]riminal activity' means a criminal offense punishable under the laws of this state by death or imprisonment in the state prison or from a criminal offense committed in another jurisdiction punishable under the laws of that jurisdiction by death or imprisonment for a term exceeding one year." (Pen. Code, § 186.9, subd. (e).)

In this case, Rayyis does not claim the People failed to present sufficient evidence concerning the amount and timing of the transactions (in the form of monetary transfers from Rayyis to his children). The only question is whether the People presented sufficient evidence to satisfy one of the two "state of mind" prongs of the statute.

The People rely solely on the second prong. They claim there was sufficient evidence that Rayyis made transfers to his children "knowing that the monetary instrument[s] [used] represent[] the proceeds of, or [were] derived directly or indirectly from the proceeds of, criminal activity . . . ."

In the trial court, the People claimed petitioner's alleged involvement in insurance fraud constituted the requisite "criminal activity." However, as discussed above, the People concede that aside from testimony describing Rayyis's extrajudicial statements, no evidence was presented at the preliminary hearing suggesting that Rayyis was involved in insurance fraud.

Apparently recognizing that the "criminal activity" requirement cannot be met by reliance on the alleged insurance fraud, the People argue in their return to the petition that Rayyis's filing of false tax returns constitutes the requisite criminal activity. However, Rayyis filed the tax returns *after* the monetary transfers took place. Thus, the checks he gave his children could not have "represent[ed] the proceeds of, [and could not have been] derived directly or indirectly from the proceeds of, [this particular] criminal activity." (Pen. Code, § 186.10, subd. (a)(2), brackets added.)

In light of the above, the trial court erred when it denied Rayyis's motion to dismiss the money laundering counts.

## DISPOSITION

The petition for writ of prohibition is granted in part. Let a peremptory writ of prohibition issue directing the respondent court to vacate its February 9, 2005 order denying petitioner's motion under Penal Code section 995 to the extent it sought to set aside counts 6 through 18 of the information, and to thereafter enter a new and different order granting the motion to that extent. In all other respects, the petition is denied.

Rubin, J., and Flier, J., concurred.