J-S41038-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| MALIK BENNETT, | |
| Appellant | No. 1418 EDA 2015 |

Appeal from the PCRA Order May 14, 2015
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0314291-2003

BEFORE:  BENDER, P.J.E., DUBOW, J., and STEVENS, P.J.E.*

MEMORANDUM BY STEVENS, P.J.E.:                    **FILED JULY 11, 2016**

Malik Bennett ("Appellant") appeals from the order entered in the Court of Common Pleas of Philadelphia County denying him relief on his first petition under the Post Conviction Relief Act ("PCRA"), 42 Pa.C.S § 9541 *et seq.*  He raises several issues alleging ineffective assistance of counsel and the denial of due process of law.  We affirm.

The PCRA court aptly summarizes the procedural and factual history of the case as follows:

> On June 1, 2009, following a jury trial [] before this Court [Court of Common Pleas], [Appellant] was found guilty of first degree murder [], carrying a firearm on a public street [], and possessing an instrument of crime (PIC).[]   That same day, [Appellant] was sentenced to the mandatory term of life in prison.[]
>
> On June 9, 2009, [Appellant] filed post-sentence motions, which were denied by [the Court of Common Pleas] on October 6, 2009.  [Appellant] filed a timely notice of appeal.[]  The Superior

*Former Justice specially assigned to the Superior Court.

Court affirmed [Appellant's] judgment of sentence on April 13, 2011.[] On June 6, 2011, [Appellant] filed an "Application for Leave to File a Petition for Permission to Appeal out of Time," and on January 3, 2012, our Supreme Court denied application for permission to file petition for allowance of appeal *nunc pro tunc*.[] The Supreme Court's order specifically stated that the application was denied "without prejudice to petitioner to file a Post Conviction Relief Act petition in the Court of Common Pleas of Philadelphia County requesting reinstatement of his allocator rights *nunc pro tunc*."

On May 1, 2012, [Appellant] filed a timely PCRA petition.[] [Appellant] raised multiple issues in his first PCRA petition, one of which was appellate counsel's ineffectiveness for failing to file a requested petition for allowance of appeal. Following an evidentiary hearing on January 11, 2013, [the Court of Common Pleas] reinstated [Appellant's] right to petition for allowance of appeal *nunc pro tunc*, and denied the other claims raised by [Appellant]. Subsequently, [the Court of Common Pleas] acknowledged that the other claims should instead have been dismissed without prejudice, and the Superior Court agreed.[] Thereafter, our Supreme Court received [Appellant's] petition for allowance of appeal and denied it.[]

On June 16, 2014, [Appellant] filed an amended PCRA petition, re-raising the other original claims that were raised in his earlier PCRA petition and adding two new claims.[] The Commonwealth filed a motion to dismiss on November 13, 2014, and [Appellant] filed a response to the Commonwealth's motion to dismiss on January 28, 2015. Having reviewed the pleadings and conducted an independent review, [the PCRA court] determined that an evidentiary hearing pursuant to Pa.R.Crim.P. 908 was warranted on only one of [Appellant's] claims.[] Following the evidentiary hearing on May 14, 2015, [the PCRA court] dismissed [Appellant's] claim in open court, and dismissed the remainder of [Appellant's] claims in a written Order that same day.[] This timely appeal followed.

On February 9, 2003, [Appellant] and Ramone Randolph (Randolph) attended a birthday party at Neil's R & R Hideaway (Bar) at 33rd and Reed Streets in South Philadelphia. The party ended in the early morning hours, and, like the other attendees, [Appellant] and Randolph left the Bar and lingered outside. At approximately 2:20 a.m., as Randolph was sitting in the driver's

seat of his car, [Appellant] approached the car and shot six times through the closed driver's side window. Four of the shots hit Randolph, who later died at the Hospital of the University of Pennsylvania.

There was a large number of people who were either standing outside the Bar or sitting in their cars near the Bar when the shooting occurred. Ronnetta Williams was standing in the middle of the street when she heard the gunshots and looked up. She saw [Appellant] running away from the car with a gun in his hand. She then approached the car and saw that Randolph had been shot. Another partygoer, Teahonda Wilkerson, was also standing outside the Bar when the shooting occurred. She heard the shots, looked up, and saw [Appellant] run away from Randolph's car and run through Stinger Park (Park), which was across the street from the Bar. Tanisha Woods had also attended the party and was sitting in a car outside the Bar with her sister-in-law and heard the shots. Moments after the shooting, she got a call on her cell phone that her brother, Anthony Woods, was chasing [Appellant] as he fled the scene of the shooting. Ms. Woods ran up the block and saw her brother in pursuit of [Appellant]. Ms. Woods saw a gun in [Appellant's] hand and was afraid that [Appellant] would shoot her brother, so she yelled to him to stop pursuing [Appellant], and he complied.[]

[Appellant] was also seen running down the street by two witnesses who had not attended the party. Raymond White[, Randolph's cousin], was standing outside of his mother's house near the Bar and across the street from the Park; he heard the shots coming from the direction of the Bar and saw a male wearing a red, white, and blue jacket and wearing a hat running through the Park immediately afterwards. The victim's nephew, Khayree Gay, was also walking near the Bar and saw a man wearing a baseball cap and jacket running through the Park.

Ballistics evidence showed that six shots were fired, all of which were fired from the same gun. Four of these bullets hit Randolph; two shots hit Randolph's upper back, and two hit his left arm. The gun was never recovered.

PCRA Court Opinion, filed Sept. 22, 2015, at 1-4.

Appellant raises the following issues for our review:

> **I.** [DID] THE PCRA COURT DEN[Y] DUE PROCESS OF LAW GUARANTEED BY THE STATE AND FEDERAL CONSTITUTIONS WHEN IT DENIED THE PCRA PETITION WITHOUT REVIEWING THE TRIAL TRANSCRIPTS[?]
>
> **II.** [DID] THE PCRA COURT DEN[Y] DUE PROCESS AND ERR[] WHEN IT DENIED THE [INEFFECTIVE ASSISTANCE OF COUNSEL] CLAIMS WITHOUT CONSIDERING THE TOTALITY OF FACTS AND CIRCUMSTANCES[?]
>
> **III.** [DID] THE PCRA COURT DEN[Y] DUE PROCESS AND ERR[] WHEN IT FAILED TO CONSIDER THE [INEFFECTIVE ASSISTANCE OF COUNSEL] CLAIM FOR FAILURE TO INTERVIEW ANTHONY WOODS DISTINCT FROM THE FAILURE TO CALL ANTHONY WOODS AS A DEFENSE WITNESS[?]
>
> **IV.** [DID] THE PCRA COURT DEN[Y] DUE PROCESS AND ERR[] WHEN IT DENIED THE [INEFFECTIVE ASSISTANCE OF COUNSEL] CLAIMS WITHOUT CONSIDERING THEM HOLISTICALLY AS OPPOSED TO ITEM-BY-ITEM[?]

Appellant's brief at 2-3.

Our standard and scope of review for the denial of a PCRA petition is well-settled:

> Our standard of review of the denial of a PCRA petition is limited to examining whether the evidence of record supports the court's determination and whether its decision is free of legal error. **Commonwealth v. Conway**, 14 A.3d 101 (Pa.Super. 2011), **appeal denied**, 612 Pa. 687, 29 A.3d 795 (2011). This Court grants great deference to the findings of the PCRA court if the record contains any support for those findings. **Commonwealth v. Boyd**, 923 A.2d 513 (Pa.Super. 2007), **appeal denied**, 593 Pa. 754, 932 A.2d 74 (2007). "[A] petitioner is not entitled to a PCRA hearing as a matter of right; the PCRA court can decline to hold a hearing if there is no genuine issue concerning any material fact and the petitioner is

- 4 -

not entitled to post-conviction collateral relief, and no purpose would be served by any further proceedings." ***Commonwealth v. Taylor***, 933 A.2d 1035, 1040 (Pa.Super. 2007), ***appeal denied***, 597 Pa. 715, 951 A.2d 1163 (2008); Pa.R.Crim.P. 907(1). "A reviewing court on appeal must examine each of the issues raised in the PCRA petition in light of the record in order to determine whether the PCRA court erred in concluding that there were no genuine issues of material fact and in denying relief without an evidentiary hearing." ***Commonwealth v. Derrickson***, 923 A.2d 466, 468 (Pa.Super. 2007), ***appeal denied***, 594 Pa. 685, 934 A.2d 72 (2007).

***Commonwealth v. Smith***, 121 A.3d 1049, 1052 (Pa.Super. 2015).

Further, a PCRA petitioner will be granted relief only when he proves, by a preponderance of the evidence, that his conviction or sentence resulted from the "[i]neffective assistance of counsel which, in the circumstances of the particular case, so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place." 42 Pa.C.S.A. § 9543(a)(2)(ii). As we have recognized:

It is well-established that counsel is presumed to have provided effective representation unless the PCRA petitioner pleads and proves all of the following: (1) the underlying legal claim is of arguable merit; (2) counsel's action or inaction lacked any objectively reasonable basis designed to effectuate his client's interest; and (3) prejudice, to the effect that there was a reasonable probability of a different outcome if not for counsel's error.

The PCRA court may deny an ineffectiveness claim if the petitioner's evidence fails to meet a single one of these prongs. Moreover, a PCRA petitioner bears the burden of demonstrating counsel's ineffectiveness.

***Commonwealth v. Franklin***, 990 A.2d 795, 797 (Pa.Super. 2010) (case citations omitted) (quoting ***Commonwealth v. Natividad***, 595 Pa. 188, 207, 938 A.2d 310, 321 (2007)) (citations omitted).

- 5 -

Appellant first charges the PCRA court with having denied him due process of law by allegedly failing to refer to transcripts of his criminal trial prior to denying his PCRA petition. Specifically, Appellant states that support for this claim lies in the docket sheet, which shows trial transcripts were transmitted well after the certified record was. This indicates, he says, that the transcripts were in storage and, thus, not available to the PCRA court at the time it conducted its review of Appellant's collateral appeal.

The PCRA court denies this allegation with the assertion in its Pa.R.A.P. 1925(a) opinion that it conducted an independent review of the entire trial record. It notes, further, that Appellant voiced no concerns during PCRA proceedings that the record was incomplete in any way, and it denounces this claim as nothing more than an undeveloped allegation unsupported by the record and unpreserved with a timely objection while the PCRA court retained jurisdiction over the matter. For its part, the Commonwealth notes that "[t]he Court of Common Pleas' website indicates that the notes of testimony from defendant's trial were uploaded on November 13, 2009, and October 8, 2009, respectively." Appellee's brief at 8.

Our review of the record substantiates the PCRA court's response, as both its Order and Opinion of May 14, 2015, dismissing all but one of Appellant's PCRA claims and its Pa.R.A.P. 1925(a) Opinion of September 22, 2015, are replete with references and accurate pinpoint citations to notes of testimony from Appellant's trial. We, therefore, reject Appellant's vaguely

presented, facial attack on the PCRA court's review of his petition as unsupported by the record.

Appellant's next claim, related to his first, alludes to allegedly critical trial evidence that he claims the PCRA court either misconstrued or altogether ignored to his prejudice. Appellant predicates this argument on an assertion that the PCRA court committed legal error by analyzing his ineffective assistance of counsel claims in a light most favorable to the Commonwealth as verdict winner. Evidence of this error, Appellant maintains, is seen where the PCRA court concludes that "five eyewitnesses testified that they heard gunshots and saw [Appellant], wearing a red, white, and blue jacket, run from the victim's car or run through the park immediately after the shots were fired[.]" Order Dismissing PCRA Claims, filed May 14, 2015 at 5. In fact, Appellant posits, the witnesses did not testify uniformly to this effect, but, instead, provided somewhat varying accounts of a young man wearing a red, white, and blue jacket—similar to the jacket worn by Appellant that night--running away from the scene and through a nearby park, with only Ronnetta Williams and Tanisha Woods identifying the man as Appellant. Such inconsistencies, Appellant maintains, undermined proof of identity at trial.

Initially, we agree with the Commonwealth's reply that Appellant has waived this issue by failing to raise it in his Pa.R.A.P. 1925(b) statement. Apparently, Appellant intends this claim to provide the substance and detail to his first claim, which was raised in his Rule 1925(b) statement but in such

a vague and nonspecific fashion that it left the PCRA court unable to surmise what portion of the trial record it had allegedly overlooked or misconstrued. We observe that, generally,

> issues not raised in a Rule 1925(b) statement will be deemed waived for review. An appellant's concise statement must properly specify the error to be addressed on appeal. In other words, the Rule 1925(b) statement must be "specific enough for the trial court to identify and address the issue [an appellant] wishe[s] to raise on appeal." *Commonwealth v. Reeves*, 907 A.2d 1, 2 (Pa.Super. 2006), *appeal denied*, 591 Pa. 712, 919 A.2d 956 (2007). "[A][c]oncise [s]tatement which is too vague to allow the court to identify the issues raised on appeal is the functional equivalent of no [c]oncise [s]tatement at all." *Id.* The court's review and legal analysis can be fatally impaired when the court has to guess at the issues raised. Thus, if a concise statement is too vague, the court may find waiver.

*Commonwealth v. Hansley*, 24 A.3d 410, 415 (Pa.Super. 2011) (some internal citations omitted).

Moreover, even if we were to review the claim, we would find it without merit. Initially, Appellant misapprehends our standard and scope of review in a collateral appeal, for this Court analyzes PCRA appeals "in the light most favorable to the prevailing party at the PCRA level." *Commonwealth v. Rykard*, 55 A.3d 1177, 1183 (Pa.Super. 2012); *see also Spotz*, 84 A.3d 294, 311 (Pa. 2014) ("The scope of review is limited to the findings of the PCRA court and the evidence of record, viewed in the light most favorable to the prevailing party at the trial level.").

> Put another way, this Court reviews appeals from the denial of collateral relief under the actual prejudice standard, not the less stringent harmless error standard. *See Spotz, supra* at 315, 320. Therefore, this Court's review of the PCRA court's order

need not and does not accept Appellant's "version of the facts." [] (emphasis omitted).

***Commonwealth v. Charleston***, 94 A.3d 1012, 1025-26 (Pa.Super. 2014) (citation omitted). Viewed in a light most favorable to the Commonwealth as verdict winner, eyewitness testimony at trial clearly implicated Appellant as the man who shot the victim and fled. Accordingly, Appellant cannot prevail on his claim that the PCRA court prejudicially mischaracterized the trial record.

In his third issue, Appellant argues that trial counsel rendered ineffective assistance of counsel for failing to conduct a pre-trial interview of Anthony Woods, who was at the Bar on the night of the shooting. According to Appellant, Mr. Woods would have proved a valuable witness because he denied ever having seen Appellant shoot Randolph or chasing Appellant through the nearby park immediately after the shooting as the prosecution said he did through statements given by Woods' sister and other eyewitnesses.[1] This testimony would have been critical, Appellant

_____

[1] Appellant contends that the PCRA court erroneously credited Tanisha Woods with testifying that she saw her brother chasing Appellant after the shooting, when, in fact, this story was "something concocted by the detectives and inserted into a statement." Appellant's brief at 29. At trial, Tanisha Woods testified as follows:

**Q:** After you heard the gunshots where did you go?
**A [by Tanisha Woods]:**[She got a phone call and walked one block up from the shooting].
**Q:** At some point when you were around that area, did you see your brother?
**A:** Uh-huh.

*(Footnote Continued Next Page)*

maintains, because the jury specifically asked the court during its deliberations why the man who chased the shooter was not brought in to testify. N.T. 6/1/09 at 133. At the PCRA hearing, Mr. Woods testified that he was inside the Bar when he heard gunshots and stayed with Randolph until emergency response arrived.

*(Footnote Continued)* ────────────

**Q:** What was he doing?
**A:** Running across the park.
**Q:** Was he chasing someone?
**A:** Yeah.
**Q:** Who was he chasing?
**A:** Malik.
**Q:** Do you see Malik in court today?
**A:** Yes.
**Q:** Can you point him out?
**A:** [Indicating, by point of finger, the defendant]
**Q:** What did you do when you saw your brother chasing Malik?
**A:** I called my brother back.
**Q:** Why did you call your brother back?

**\*\*\***

**A:** I didn't want my brother to get hurt.
**Q:** Did your brother listen to you and did he stop chasing?
**A:** Yes.

N.T. 5/28/09 at 166-67. Friend and neighbor Ronnetta Williams also identified Anthony Woods as the man chasing Appellant after the shooting. N.T. at 76-77. At the PCRA hearing, Tanisha Woods confirmed she called her brother back while he was chasing the shooting suspect, although she now said she could not have identified Appellant as the man whom her brother was chasing. N.T. 5/14/15 at 61-66. The PCRA court, however, deemed incredible Tanisha Woods' recanting of the identification she made of Appellant at both the investigation scene and at trial.

When raising a claim of ineffectiveness for the failure to call a potential witness, a petitioner satisfies the performance and prejudice requirements of the [ineffectiveness] test by establishing that: (1) the witness existed; (2) the witness was available to testify for the defense; (3) counsel knew of, or should have known of, the existence of the witness; (4) the witness was willing to testify for the defense; and (5) the absence of the testimony of the witness was so prejudicial as to have denied the defendant a fair trial. To demonstrate [ ] prejudice, a petitioner must show how the uncalled witnesses' testimony would have been beneficial under the circumstances of the case. Thus, counsel will not be found ineffective for failing to call a witness unless the petitioner can show that the witness's testimony would have been helpful to the defense. A failure to call a witness is not *per se* ineffective assistance of counsel[,] for such decision usually involves matters of trial strategy.

*Commonwealth v. Sneed*, 45 A.3d 1096, 1108–09 (Pa. 2012) (citations and quotation marks omitted).

At the PCRA hearing, Anthony Woods was adamant that he knew nothing about the shooting other than seeing Randolph covered in blood in the aftermath. He denied seeing the shooting, knowing who committed it, and chasing the suspect on the night it happened. He testified that he made no attempt to learn anything about who shot his good friend in the many years that passed between the shooting and the day of his PCRA testimony. He testified that he would have appeared as a trial witness if he had been subpoenaed, but the sum and substance of his testimony would have been that he knew nothing.

Appellant has not sufficiently demonstrated that this testimony could have substantially aided his defense such that counsel's failure to interview Woods prejudiced him at trial. Woods' testimony did not exculpate

Appellant; it simply removed himself from every aspect of the shooting of Ramone Randolph. By repeatedly disclaiming any knowledge of who committed the shooting or who may have pursued the shooter immediately afterward, Woods established only that a pre-trial interview of him would have been fruitless, as his statement had little to no probative value. Indeed, Appellant fails to demonstrate how Anthony Woods' almost reflexive denial of knowledge, as exhibited at the PCRA hearing, would have impeached the credibility of the many eyewitness accounts naming Appellant as the man wearing the blue, red, and white jacket who ran from the scene carrying a gun. This claim, therefore, lacks merit.

In Appellant's fourth and final enumerated question presented, he raises seven additional allegations of trial counsel's ineffective assistance both individually and collectively. They include: (1) a reiteration of counsel's failure to conduct an investigation including the failure to interview Anthony Woods; (2) counsel's failure to play a recording of the "9-1-1" call in which the caller suggests there is more than one shooter when she says "they're outside shooting. The bar just let out, and they're ju. . .it's like the OK corral out there."; (3) counsel's failure to lodge a hearsay objection to the introduction of the autopsy report; (4) counsel's failure to object to the Commonwealth's calling a witness to provide prior inconsistent statements of some eyewitnesses who proved reluctant to testify—presumptively one of the detectives, though the brief fails to identify the witness or where in the notes of testimony his objectionable testimony appears; (5) counsel's failure

to object to a conviction based solely on unsworn testimony; (6) counsel's failure to object to the trial court's instruction (not provided in the brief), which "merge[d] premeditation and deliberation into one synonymous lump"; (7) a second reiteration of counsel's ineffective failure to interview Anthony Woods; and (8) a claim that all the above instances of alleged ineffective assistance, when considered collectively, would have prejudiced Appellant.

In its Rule 1925(a) opinion, the PCRA court addresses each individual claim of ineffective assistance of counsel and rejects it on first or second prong grounds, save for the autopsy-based claim, which the court determined could not have prejudiced Appellant. See PCRA Court Opinion at 9-22. After careful review of the record, we concur with the PCRA court's cogent and comprehensive expression of rationale in dismissing these claims and, accordingly, we adopt its opinion in this regard.[2]

_____

[2] With respect to Appellant's claim of cumulative prejudice, we note that the jurisprudence of this Commonwealth has recognized:

> We have often held that no number of failed claims may collectively warrant relief if they fail to do so individually. However, we have clarified that this principle applies to claims that fail because of lack of merit or arguable merit. When the failure of individual claims is grounded in lack of prejudice, then the cumulative prejudice from those individual claims may properly be assessed.

*Commonwealth v. Spotz*, 18 A.3d 244, 320–321 (Pa. 2011) (citations and quotation marks omitted). Significantly, however, there is no prejudice to aggregate in the present case, for the PCRA court resolved only one issue
*(Footnote Continued Next Page)*

Order is Affirmed.
Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 7/11/2016

*(Footnote Continued)* ───────────

with resort to the prejudice prong and concluded there was no prejudice at all—a disposition with which we agree.

PHILADELPHIA COURT OF COMMON PLEAS
CRIMINAL TRIAL DIVISION

COMMONWEALTH                                   :
                                               :        CP-51-CR-0314291-2003
                                               :        1418 EDA 2015
                 v.                            :

                                               :

MALIK BENNETT                                  :     FILED

Sarmina, J.                                    :       SEP 2 2 2015
September 22, 2015                                   Criminal Appeals Unit
                                                  First Judicial District of PA

OPINION

PROCEDURAL HISTORY

On June 1, 2009, following a jury trial[1] before this Court, Malik Bennett (hereafter,

petitioner) was found guilty of first degree murder (H-1), carrying a firearm on public streets (M-1),

and possessing instruments of crime (PIC)(M-1).[2] That same day, petitioner was sentenced to the

mandatory term[3] of life in prison.[4] Notes of Testimony (N.T.) 6/1/09 at 144-45.

On June 9, 2009, petitioner filed post-sentence motions, which were denied by this Court on

October 6, 2009. Petitioner filed a timely notice of appeal.[5] The Superior Court affirmed

petitioner's judgment of sentence on April 13, 2011.[6] On June 6, 2011, petitioner filed an

---

[1] At trial, petitioner was represented by William Spade, Esquire.

[2] 18 Pa.C.S. §§ 2502(a), 6108, and 907(a), respectively.

[3] 18 Pa.C.S. 1102(a).

[4] As to the charge of carrying a firearm on public streets, petitioner was sentenced to a concurrent term of not less than one nor more than five years imprisonment. As to the charge of PIC, petitioner was sentenced to a concurrent term of not less than one nor more than five years imprisonment. N.T. 6/1/09 at 144-45.

[5] On direct appeal, petitioner was represented by Alan Tauber, Esquire, who was retained by petitioner's family.

[6] Commonwealth v. Bennett, No. 3202 EDA 2009, slip op. (Pa.Super., April 13, 2011) (memorandum opinion).



"Application for Leave to File a Petition for Permission to Appeal out of Time," and on January 3, 2012, our Supreme Court denied application for permission to file petition for allowance of appeal *nunc pro tunc*.[7] The Supreme Court's order specifically stated that the application was denied "without prejudice to petitioner to file a Post Conviction Relief Act petition in the Court of Common Pleas of Philadelphia County requesting reinstatement of his *allocatur* rights *nunc pro tunc*."

On May 1, 2012, petitioner filed a timely PCRA petition.[8] Petitioner raised multiple issues in his first PCRA petition, one of which was appellate counsel's ineffectiveness for failing to file a requested petition for allowance of appeal. Following an evidentiary hearing on January 11, 2013, this Court reinstated petitioner's right to petition for allowance of appeal *nunc pro tunc*, and denied the other claims raised by petitioner. Subsequently, this Court acknowledged that the other claims should instead have been dismissed without prejudice, and the Superior Court agreed.[9] Thereafter, our Supreme Court received petitioner's petition for allowance of appeal and denied it.[10]

On June 16, 2014, petitioner filed an amended PCRA petition, re-raising the other original claims that were raised in his earlier PCRA petition and adding two new claims.[11] The Commonwealth filed a motion to dismiss on November 13, 2014, and petitioner filed a response to the Commonwealth's motion to dismiss on January 28, 2015. Having reviewed the pleadings and conducted an independent review, this Court determined that an evidentiary hearing pursuant to

---

[7] Commonwealth v. Bennett, No. 89 EM 2011, slip op. (Pa. Jan. 3, 2012).

[8] Cheryl Sturm, Esquire, represents petitioner on collateral attack.

[9] On November 19, 2013, the Superior Court affirmed this Court's ruling as to ineffectiveness of counsel for failing to pursue *allocatur* and vacated this Court's decision on the other claims, which were to be pursued after the resolution of the *allocatur* petition.

[10] Commonwealth v. Malik Bennett, No. 101 EAL 2013, slip op. (June 27, 2013).

[11] Petitioner also filed a motion for recusal on July 15, 2014, alleging that this Court had "pre-judged" the issues. The motion was denied by this Court on September 9, 2014.

2

Pa.R.Crim.P. 908 was warranted on only one of petitioner's claims.[12] Following the evidentiary hearing on May 14, 2015, this Court dismissed petitioner's claim in open court, and dismissed the remainder of petitioner's claims in a written Order that same day.[13] This timely appeal followed.

FACTS

On February 9, 2003, petitioner and Ramone Randolph (Randolph) attended a birthday party at Neil's R & R Hideaway (Bar) at 33rd and Reed Streets in South Philadelphia. N.T. 5/28/09 at 162-63. The party ended in the early morning hours, and, like the other attendees, petitioner and Randolph left the Bar and lingered outside. Id. At approximately 2:20 a.m., as Randolph was sitting in the driver's seat of his car, petitioner approached the car and shot six times through the closed driver's side window. Id. at 69, 153. Four of the shots hit Randolph, who later died at the Hospital of the University of Pennsylvania. N.T. 5/29/09 at 32-33.

There was a large number of people who were either standing outside the Bar or sitting in their cars near the Bar when the shooting occurred. Ronnetta Williams was standing in the middle of the street when she heard the gunshots and looked up. N.T. 5/28/09 at 73-74. She saw petitioner running away from the car with a gun in his hand. Id. at 74. She then approached the car and saw that Randolph had been shot. Id. at 77-78. Another partygoer, Teahonda Wilkerson, was also standing outside the Bar when the shooting occurred. N.T. 5/29/09 at 46-48. She heard the shots, looked up, and saw petitioner run away from Randolph's car and run through Stinger Park (Park), which was across the street from the Bar. Id. at 48-49. Tanisha Woods had also attended the party and was sitting in a car outside the Bar with her sister-in-law and heard the shots. N.T.

---

[12] On May 14, 2015, this Court held an evidentiary hearing with respect to petitioner's claim that trial counsel was ineffective for failing to call as a witness Anthony Woods, also known as "Tez."

[13] At the conclusion of the evidentiary hearing, this Court informed petitioner that his remaining claims were dismissed, and handed petitioner and counsel a copy of the dismissal Order, which explained this Court's reasons for dismissal. N.T. 5/14/15 at 85.

3

5/28/09 at 162-64. Moments after the shooting, she got a call on her cell phone that her brother, Anthony Woods, was chasing petitioner as he fled the scene of the shooting. Id. at 165. Ms. Woods ran up the block and saw her brother in pursuit of petitioner. Id. Ms. Woods saw a gun in petitioner's hand and was afraid that petitioner would shoot her brother, so she yelled to him to stop pursuing petitioner, and he complied. Id. at 166, 171; 176.[14]

Petitioner was also seen running down the street by two witnesses who had not attended the party. N.T. 5/28/09 at 115; N.T. 5/29/09 at 136. Raymond White[15] was standing outside of his mother's house near the Bar and across the street from the Park; he heard the shots coming from the direction of the Bar and saw a male wearing a red, white, and blue jacket and wearing a hat running through the Park immediately afterwards. N.T. 5/28/09 at 115, 123. The victim's nephew, Khayree Gay, was also walking near the Bar and saw a man wearing a baseball cap and jacket running through the Park. N.T. 5/29/09 at 136-37.

Ballistics evidence showed that six shots were fired, all of which were fired from the same gun. N.T. 5/28/09 at 195, 200. Four of these bullets hit Randolph; two shots hit Randolph's upper back, and two hit his left arm. Id. at 152. The gun was never recovered. Id. at 195.

## LEGAL ANALYSIS

Petitioner has raised ten issues on appeal.[16]

1. This Court denied due process of law guaranteed by the state and federal constitutions when it denied the PCRA petition without a review of the entire record.

2. This Court abused its discretion when it denied the motion for recusal.

---

[14] Ms. Woods' testimony was largely consistent with a statement she had given during her police interview after the shooting. The only major discrepancy in her testimony at trial was that, during her police interview, she stated that she saw the gun in petitioner's hand while her brother was chasing him, and in her trial testimony she denied that she had seen the gun. N.T. 5/28/09 at 170-72.

[15] Mr. White happened to be Randolph's cousin.

[16] This Court has rephrased petitioner's claims for ease of disposition.

4

3. This Court erred when it ruled that Mr. Woods was not a credible witness.

4. This Court erred by dismissing petitioner's claim that trial counsel was ineffective for failing to play the 9-1-1 tape.

5. This Court erred by dismissing petitioner's claim that trial counsel was ineffective for failing to object to the admission of the autopsy report on the grounds that it was testimonial hearsay in violation of the Confrontation Clause.

6. This Court erred by dismissing petitioner's claim that trial counsel was ineffective for failing to object to the Commonwealth's trial tactic of calling a witness for the sole purpose of introducing the witness's statement and convicting petitioner based on alleged prior inconsistent statements of its witnesses.

7. This Court erred by dismissing petitioner's claim that trial counsel was ineffective for failing to object on the grounds that petitioner's conviction was based solely on unsworn statements in violation of the Confrontation Clause.

8. This Court erred by dismissing petitioner's claim that trial counsel was ineffective for failure to request an instruction on the element of "deliberation" in a case of first degree murder.

9. This Court erred by dismissing petitioner's claim that trial counsel was ineffective for failing to interview and call as a witness Anthony Woods.

10. Petitioner is entitled to relief based upon the cumulative effect of the errors.

**1. This Court denied due process of law guaranteed by the state and federal constitutions when it denied the PCRA petition without a review of the entire record.**

First, petitioner claims that this Court denied him due process of law guaranteed by the state and federal constitutions when it denied the PCRA petition without a review of the entire record. Specifically, petitioner claims that "[i]n this case, the PCRA Unit did not have the entire record, which makes it impossible for the PCRA Court to review the record." Statement of Matters Complained of on Appeal, 6/8/15, at 2. Petitioner, however, failed to state which portion of the record the PCRA Unit was supposedly missing. As petitioner has not proven this claim, it fails.

To determine whether any of petitioner's claims merited a hearing, this Court conducted an independent review of the trial record, petitioner's filings, as well as the Commonwealth's filings. Petitioner's vague allegation that the PCRA Unit did not have the entire record in this case, without

5

more, does not entitle petitioner to relief.[17] Petitioner provides nothing in support of this claim aside from his bare assertion of it. In order to be eligible for relief under the PCRA, the petitioner must "plead and prove" each ineffectiveness claim in his PCRA petition. Commonwealth v. Liebel, 825 A.2d 630, 632 (Pa. 2003), *quoting* 42 Pa.C.S.A. § 9543(a)(2)(ii). As petitioner has not proven this claim, it fails.

## 2. This Court abused its discretion when it denied the motion for recusal.

Petitioner's second claim is that this Court abused its discretion when it denied petitioner's motion for recusal. Petitioner claims that, after petitioner's right to petition for allowance of appeal was restored by this Court, and the remaining claims were dismissed, this Court should have recused itself because it had already pre-judged the remaining issues contained in the PCRA petition. Because this Court did not in fact pre-judge the issues in his PCRA claim, and because petitioner cannot point to any support for his claim that this Court exhibited bias, unfairness, or impropriety, this claim fails.

In petitioner's initial PCRA petition, he raised multiple issues, one of which was appellate counsel's ineffectiveness for failing to file a requested petition for allowance of appeal. Following an evidentiary hearing on January 11, 2013, this Court reinstated petitioner's right to petition for allowance of appeal *nunc pro tunc*, and denied the other claims raised by petitioner. N.T. 1/11/13 at 148-54. So that petitioner understood the reasons why his other claims were denied, and could therefore decide whether or not to file an appeal regarding the dismissal of any of those issues, this Court explained on the record its reasons for its dismissal of petitioner's remaining claims. Id. at

---

[17] Petitioner's counsel has been counsel on this case since prior to the filing of the initial PCRA petition on May 1, 2012. This is the first time this Court is hearing any complaint that the PCRA Unit did not have the complete record in this case. And, she never asserted that her representation of petitioner for PCRA purposes was impeded by an incomplete record. For purposes of the PCRA, an issue has been waived if "the petitioner could have raised it but failed to do so . . . in a prior state postconviction proceeding." 42 Pa.C.S. § 9544(b). As petitioner is now raising this claim for the first time on appeal of the dismissal of his PCRA petition, it has been waived, and fails for that reason as well.

6

143-54. Subsequently, this Court realized that the other claims should instead have been dismissed without prejudice, and noted this in its 1925(a) Opinion.[18] The Superior Court agreed and vacated this Court's dismissal of the remaining claims in petitioner's PCRA petition, so that they could be pursued after the resolution of petitioner's petition for allowance of appeal to our Supreme Court. Thereafter, our Supreme Court received petitioner's petition for allowance of appeal and denied it. When petitioner re-filed his substantive PCRA claims, and added two new claims thereto, he also filed a motion for recusal, alleging that this Court had "pre-judged" the issues that were being refiled. On September 9, 2014, this Court denied petitioner's motion for recusal.

In the motion, petitioner, without citing to any prejudicial statements made by this Court, argued:

> There is no question that the judge who presided over the numerically "first" PCRA has pre-judged the issues which Petitioner now presents in what must be considered his "first" PCRA. Petitioner has a right to a full and fair hearing of his first PCRA. There is at the minimum, an appearance of impropriety in the same judge presiding over the PCRA Petition that is now before the Court and the appearance of prejudice. Recusal is required.
>
> [ . . . ]
>
> The current PCRA Judge has expressed a fixed opinion regarding the issues contained in Mr. Bennett's PCRA petition that is now before the court, even though some of the issues would require an evidentiary hearing. The public record made at the conclusion of the evidentiary hearing held on January 11, 2013 in this case has irrevocably called into question the judge's impartiality and there is nothing the judge can do to change the record.

Petitioner's Motion for Recusal, 7/11/14, at 9, 11.

At the conclusion of the evidentiary hearing held on January 11, 2013, this Court stated that the claims had been reviewed by the Court, and were being dismissed as meritless, and explained the

---

[18] At the conclusion of the evidentiary hearing on January 11, 2013, this Court stated that ordinarily, with requests for reinstatement of appellate rights *nunc pro tunc*, substantive PCRA claims usually are not raised until the appellate proceedings are finished. N.T. 1/11/13 at 149. However, since the substantive issues had been presented by PCRA counsel, and this Court had reviewed them, this Court decided to address all of the PCRA claims raised in "one fell swoop." Id. PCRA counsel made no objection at that time, and did not ask the Court to hold a decision on the substantive PCRA claims in abeyance. Id.

7

Court's reasoning. Aside from that, petitioner has failed to produce any evidence of this Court's bias, prejudice, or unfairness. Petitioner cannot cite to anything in the record in which this Court expressed impropriety. "It is the burden of the party requesting recusal to produce evidence establishing bias, prejudice or unfairness which raises a substantial doubt as to the jurist's ability to preside impartially." Commonwealth v. Birdsong, 650 A.2d 26, 30 (Pa. 1994), *citing* Commonwealth v. Abu-Jamal, 720 A.2d 79 (Pa. 1998).

This Court carefully considered each of the claims raised in petitioner's current PCRA petition anew, and, in fact, granted an evidentiary hearing on one of the claims petitioner raised. As this Court at no time expressed prejudice with respect to petitioner's PCRA petition, petitioner's motion for recusal was properly dismissed, and this claim fails.[19]

**3. This Court erred when it ruled that Mr. Woods was not a credible witness.**

Petitioner's third claim is that this Court erred when it ruled that Mr. Woods was not a credible witness. Petitioner claimed that, had Mr. Woods been interviewed and called as a defense witness, there is a reasonable probability that the outcome at trial would have been different. As this Court's credibility determination of Mr. Woods' testimony was supported by the facts of record, this claim fails.

At the PCRA stage, the PCRA court, as factfinder, is required to make credibility determinations regarding witnesses. Commonwealth v. Medina, 92 A.3d 1210, 1219 (Pa.Super. 2014).

In support of his claim that trial counsel was ineffective for failing to interview and present the testimony of Anthony Woods, petitioner submitted an affidavit signed by Mr. Woods, which states the following: Anthony Woods, known as "Tez," was not contacted by petitioner's attorney

---

[19] One could say any time a judge files a 907 Notice prior to dismissal of the claims, the PCRA petition has been pre-judged.

8

at the time of trial, and would have been willing to testify if he was contacted. At the time of the shooting of Ramone Randolph, Woods was inside Neil's R&R Hideaway, and was not chasing petitioner. Woods did not see petitioner with a gun. Anthony Woods Affidavit, 5/14/2013. Upon review of this claim and Mr. Woods' affidavit, this Court granted petitioner an evidentiary hearing, which was held on May 14, 2015.

At the hearing, following Mr. Woods' testimony, this Court determined that Mr. Woods was not a credible witness, and that his testimony would not have changed the outcome at trial. N.T. 5/14/15 at 85. At the evidentiary hearing, Mr. Woods testified to the information contained in his affidavit, which claimed that he was interviewed by police a day or two after the shooting at 8th and Race Streets, but never signed a written statement.[20] Id. at 9, 25.

When questioned regarding why he did not come forward with this information at the time of trial, Mr. Woods stated that he wanted nothing to do with the situation:

The Court: Well, five years ago would you have come at the time of trial?
[ . . . ]
Mr. Woods: Well, yeah, I probably would have come at the trial. I would have to be subpoenaed. Yeah, I would have come to testify, absolutely.
The Court: Why would you have to be subpoenaed?
Mr. Woods: Because I didn't sign no statement. I wasn't subpoenaed. I mean, why – why I got to be in court if my friend – my friend got killed. I know a guy from the neighborhood, I didn't want no parts of nothing. I didn't want to be involved with nothing and nothing.
[ . . . ]
ADA Paul: So your best friend gets killed and you don't want to know anything about who murdered him or what – you didn't want to follow the trial of someone who killed your friend?
Mr. Woods: Listen, ma'am, what you don't understand, I grew up in the streets. I don't want no parts. There are certain codes I just go by, bottom line. I don't want no parts. I don't want to be involved.
The Court: Excuse me, what code?
Mr. Woods: I just don't – I don't want to be involved with nothing. I don't want my name involved with nothing.

---

[20] Assistant District Attorney Paul stated on the record that she searched the file, and could find no interview or statement from Anthony Woods. N.T. 5/14/15 at 70. This statement was not "evidence" in the case, as statements of counsel are not evidence.

9

N.T. 5/14/15 at 30-33.

There were a number of inconsistencies throughout the entirety of Mr. Woods' testimony. At trial, Mr. Woods' sister, Tanisha Woods, whom he stated that he sees at least twice a week, testified that she saw her brother chasing petitioner through the Park after the shooting. N.T. 5/14/15 at 29. Mr. Woods testified at the evidentiary hearing that, despite living at his mother's home and seeing his sister at least twice a week, he had no idea that his sister testified at petitioner's trial to that effect. Id. at 36. However, Mr. Woods' affidavit makes clear that he was aware that he was reportedly seen chasing petitioner through the Park that night. In his affidavit, he stated, "I was not chasing Malik Bennett at the time Randolph was shot." Id. at 6, 36; Exhibit A. Mr. Woods claimed that, although he had conversations with individuals in his neighborhood about this case, it was never brought up that his sister had testified, and, in fact, had had to be taken into custody and compelled to testify. N.T. 5/14/15 at 34, 38.

When questioned regarding why Mr. Woods would change his mind and come forward with this information over ten years later, Mr. Woods stated: "Actually, I got locked up, actually, if you want to be honest." Id. at 41. Mr. Woods went on to explain that, while in custody, he met and spoke with many friends of petitioner's, whom he would laugh and joke with about things that happened in the neighborhood. Id. at 41-42.

At the evidentiary hearing, Mr. Woods' sister, Tanisha Woods, was called to testify by the Commonwealth. She stood by her trial testimony and police statement, and refuted her brother's affidavit and evidentiary hearing testimony. See Exhibit C-1, Tanisha Woods Police Statement. Ms. Woods confirmed that she did not want to testify at trial, and was therefore taken into custody and compelled to testify. N.T. 5/14/15 at 59. At the hearing, Ms. Woods recollected that, following the shooting, she was in a vehicle with her sister-in-law, when she received a phone call telling her that her brother was out there. Id. at 60-61. She then jumped out of the vehicle and saw her brother

10

chasing someone through the Park. Id. at 61. Ms. Woods fell to her knees in the middle of the street and began yelling to her brother to come back because she did not want him to get hurt. Id. at 61, 63. Mr. Woods stopped chasing petitioner, and ran back towards his sister. Id. at 61. The two had a conversation in the middle of the street, and then they got into the vehicle with Ms. Woods' sister-in-law, and drove home. Id. at 61-62.

Having considered the totality of the testimony at trial,[21] as well as at the evidentiary hearing, this Court made a proper determination that Mr. Woods was not a credible witness, and dismissed this claim. As this determination was supported by the factual record, and within the discretion of this Court, this claim fails.

**4. This Court erred by dismissing petitioner's claim that trial counsel was ineffective for failing to play the 9-1-1 tape.**

Petitioner's fourth claim is that this Court erred in dismissing petitioner's claim that trial counsel was ineffective for failing to play a 9-1-1 tape, which portrayed events "in a way that conflicts with the prior statements of eyewitnesses, and squares with any autopsy report which indicates that the decedent was not shot at close range."[22] Because the decision by trial counsel not to play the 9-1-1 tape at trial was a reasonable trial strategy, this claim lacks merit, and was properly dismissed by this Court.

According to the Pennsylvania Supreme Court in Commonwealth v. Balodis, 747 A.2d 34, 343 (Pa. 2000), counsel is presumed effective, and under 42 Pa.C.S. § 9543(a), petitioner has the burden of proving ineffective assistance of counsel. In order to be eligible for PCRA relief due to ineffective assistance, petitioner is required to prove that such assistance "so undermined the truth-

---

[21] At trial, multiple witnesses corroborated Ms. Woods' testimony that, following the shooting, petitioner was seen running away from the scene. See Statement of Facts, *supra*.

[22] The autopsy report, to which petitioner actually objects, did not indicate that the decedent was not shot at close range. Because nothing in the report indicated that the shooting occurred at close range, that would be an impermissible inference.

11

determining process that no reliable adjudication of guilt or innocence could have taken place." 42 Pa.C.S. § 9543(a)(2)(ii). Petitioner "must prove (1) that the underlying claim has arguable merit, (2) that counsel's conduct was without a reasonable basis designed to effectuate his or her client's interest, and (3) that counsel's ineffectiveness prejudiced [petitioner]." Commonwealth v. Allen, 833 A.2d 800, 802 (Pa.Super. 2003) (citations omitted). "All three prongs of this test must be satisfied. If [petitioner] fails to meet even one prong of the test, his conviction will not be reversed on the basis of ineffective assistance of counsel." Commonwealth v. O'Bidos, 849 A.2d 243, 249 (Pa.Super. 2004).

As a general rule, "'trial strategy is a matter best left to counsel and [ ] a defendant is not entitled to relief simply because the strategy is unsuccessful.'" Commonwealth v. McMaster, 666 A.2d 724, 732 (Pa.Super. 1995), *quoting* Commonwealth v. Tippens, 598 A.2d 553, 556 (Pa.Super. 1991).

> Trial decisions . . . are within the exclusive province of counsel. Counsel will not be declared ineffective where, as here, his trial strategy had a reasonable basis designed to effectuate his client's interest . . . and appellant has failed to show that the alternatives not chosen offered a potential for success substantially greater than the strategy and tactics actually utilized.

Commonwealth v. Metzger, 441 A.2d 1225, 1229-30 (Pa.Super. 1981)(citations omitted).

The test for deciding whether counsel had a reasonable basis for his action or inaction is "whether no competent counsel would have chosen that action or inaction, or, the alternative, not chosen, offered a significantly greater potential chance of success." Commonwealth v. Stewart, 84 A.3d 701, 707 (Pa.Super. 2014), appeal denied, 93 A.3d 463 (Pa. 2014). Counsel's decisions are considered reasonable if they effectuate the client's interests. Id.

Petitioner, who provided no transcript of the 9-1-1 tape to this Court, claims that, on the tape, the female caller can be heard saying, "Ah . . . I'm at the corner of 33rd and Reed and they're

12



outside shooting. The bar just let out, and they're ju . . . it's like the OK Corral out there." Because trial counsel had a reasonable basis for not playing the 9-1-1 tape at trial, this claim fails.

Petitioner's only support for this claim is that the 9-1-1 tape says "they're" shooting, which suggests that more than one person was firing shots.[23] Without citing to the record, petitioner states that the Commonwealth's theory was that "only Mr. Bennett was firing shots." This claim is without merit.

Under the second prong of the ineffectiveness test, trial counsel's decision not to play a 9-1-1 tape in which a woman described the shooting for which petitioner was charged as "just like the OK Corral," was a reasonable one. Not one witness at trial even suggested there was an additional shooter, nor did the ballistics evidence support such a claim. Five eyewitnesses testified that they heard gunshots and saw petitioner, wearing a red, white, and blue jacket, run from the victim's car or run through the Park immediately after the shots were fired: Ronnetta Williams, who was standing in the middle of the street when she heard the gunshots, testified that she saw petitioner running away from the car with a gun in his hand. Teahonda Wilkerson, also standing outside when the shots were fired, testified that she saw petitioner run away from the victim's car and run through the Park across the street. Tanisha Woods testified that after she heard the shots, she received a telephone call notifying her that her brother, Anthony Woods, was chasing a male as he fled the scene of the shooting. Ms. Woods testified that she then ran up the block and saw her brother chasing petitioner. Raymond White, standing outside of his mother's house at the time of the shooting, also testified that he saw a male run through the Park immediately after the shots were fired. Finally, Khayree Gay, the victim's nephew, testified that he was walking down the street and saw a male running through the Park after he heard the shots. After hearing the testimony of five

---

[23] Though petitioner discusses what the 9-1-1 tape says, it was not submitted with either the amended petition or with petitioner's response to the Commonwealth's motion to dismiss.

13

eyewitnesses who, in sum, directly or circumstantially saw petitioner flee the scene with a gun in his hand, counsel's decision not to alert the jury that the setting on that street corner was comparable to the Wild West was a reasonable one. Therefore, this Court properly determined that this claim lacked merit, and it fails.

**5. This Court erred by dismissing petitioner's claim that trial counsel was ineffective for failing to object to the admission of the autopsy report on the grounds that it was testimonial hearsay in violation of the Confrontation Clause.**

Petitioner's fifth claim is that trial counsel was ineffective for failing to object to the admission of the autopsy report on grounds that it was testimonial hearsay in violation of the Confrontation Clause of the Sixth Amendment. Although Dr. Gulino based his testimony on the findings of Dr. McDonald, because petitioner suffered no prejudice as a result of this, this Court did not err in dismissing this claim, and it fails.

In Bullcoming v. New Mexico, 131 S.Ct. 2705 (2011), the defendant was charged with driving under the influence (DUI). At trial, a forensic lab report of the defendant's blood alcohol content as analyzed and prepared by the New Mexico Department of Health was offered into evidence. The report was completed, signed and certified by an analyst who was not called to testify. Id. at 2711-12. A different analyst testified as to the procedures and equipment used but admitted that he had no involvement with the specific sample. Id. at 2712.

> [S]urrogate testimony of the kind [the testifying witness] was equipped to give could not convey what [the certifying analyst] knew or observed about the events his certification concerned, i.e. the particular test and testing process he employed. Nor could such surrogate testimony expose any lapses or lies on the certifying analyst's part.

Id. at 2715.

In Commonwealth v. Yohe, 39 A.3d 381 (Pa.Super. 2012), a doctor testified about a blood sample in a DUI case. The doctor "did not handle appellee's blood sample, prepare portions for testing, place the prepared portions in the testing machines, or retrieve the portions after testing." Id. at 389. But he did "certify the results of the testing and author the report sought to be admitted

14

as evidence against appellee." Id. at 390. The Superior Court found that distinction to be dispositive.

At trial, Dr. Anthony Gulino, as Chief Medical Examiner, testified regarding the autopsy report that had been prepared by Dr. Greg McDonald:

> ADA ZARALLO: Dr. Gulino, you've indicated that you're the chief medical examiner. How long have you held that position, sir?
> DR. GULINO: Since April of 2008.
> [ . . . ]
> ADA ZARALLO: Dr. Gulino, you reviewed a specific file upon my request. And who was the decedent's name? Who was the decedent?
> DR. GULINO: The decedent was Ramone Randolph.
> ADA ZARALLO: Now, you did not perform this autopsy; is that correct?
> DR. GULINO: That's correct.
> ADA ZARALLO: Who did perform it?
> DR. GULINO: Dr. Greg McDonald, who is no longer with the Medical Examiner's Office.
> ADA ZARALLO: Did you, in fact, review Dr. McDonald's findings?
> DR. GULINO: Yes, I did.
> ADA ZARALLO: Beyond this type of report, did you review all of the other – anything else that still existed with respect to his findings?
> DR. GULINO: I reviewed all of the documents in the Medical Examiner's case file as well as the photographs which were taken at the time of the autopsy.
> ADA ZARALLO: Was a manner of death determined in the autopsy of Mr. Randolph?
> DR. GULINO: Yes.
> ADA ZARALLO: What was the manner of death?
> DR. GULINO: The manner of death is homicide.
> ADA ZARALLO: Was a cause of death determined?
> DR. GULINO: Yes.
> ADA ZARALLO: What was the cause of death, sir?
> DR. GULINO: Multiple gunshot wounds.
> ADA ZARALLO: Were the specific locations gunshot wounds determined?
> DR. GULINO: Yes.
> ADA ZARALLO: Can you tell us, first of all, was there any way for Dr. McDonald or you or anyone to determine the order with which the gunshots were received by the victim?
> DR. GULINO: No.

Notes of Testimony (N.T.) 5/28/2009 at 149, 151-53.

Because none of Dr. Gulino's testimony is cast in terms of Dr. Gulino's own conclusion that he reached from conducting tests or analyzing the information, it might seem appropriate to call Dr. Gulino a surrogate. However, after analysis of this issue, this Court determined that, even if there was a violation of petitioner's rights under the Confrontation Clause, counsel's failure to raise this

15

issue at trial did not actually prejudice petitioner. To establish the prejudice prong, petitioner must show that there is a "reasonable probability" that the outcome of the proceedings would have been different but for counsel's ineffectiveness. Commonwealth v. Dennis, 950 A.2d 945, 954 (Pa. 2008).

Had trial counsel objected to Dr. Gulino's testimony, the outcome at trial would not have changed. Testimony as to manner and cause of death is not an element of the charge of murder; the element to be proven is that a particular person is dead. Commonwealth v. Meder, 611 A.2d 213, 217 (Pa.Super. 1992). In Meder, the Superior Court found that the testimony of the defendant's mother, who testified that she found the victim lying cold and lifeless on the side of the defendant's bed, was sufficient to establish the element of death in a murder prosecution. Id. Here, there was sufficient evidence before the jury that the individual in question was dead.[24] Further, Dr. Gulino's testimony was not such that only the person who conducted the autopsy could testify about it: there was no evidence of any stippling or as to the distance from which the shots would have been fired. The autopsy report, from which Dr. Gulino's testimony emanated, merely stated that the victim had died, that the manner of death was homicide, and that the cause of death was multiple gunshot wounds. N.T. 5/28/09 at 153-55. For all intents and purposes, it was superfluous. Had counsel raised this claim at trial, the outcome would still have been the same, given Officer Graber's testimony. Therefore, this Court properly determined that this claim failed.

**6. This Court erred by dismissing petitioner's claim that trial counsel was ineffective for failing to object to the Commonwealth's trial tactic of calling a witness for the sole purpose of introducing the witness's statement and convicting petitioner based on alleged prior inconsistent statement of its witnesses.**

Petitioner's sixth claim is that trial counsel was ineffective for failing to object to the Commonwealth's tactic of calling witnesses in order to introduce their prior inconsistent statements.

---

[24] In fact, the statement given by Officer Graber, who arrived at the scene and accompanied the victim to the hospital, where he was ultimately pronounced dead, was introduced into evidence. In that statement, Officer Graber states that the victim was pronounced dead at HUP by Dr. Brashow at 2:58 A.M. N.T. 5/29/09 at 34; Exhibit C-18. Counsel did not raise a PCRA claim as to this witness's testimony.

16

Petitioner claims that the Commonwealth called witnesses "for the sole purpose of introducing and convicting based on alleged prior inconsistent statements of its witnesses." Petitioner's only support for this claim is that the Commonwealth stated in its closing argument that he had anticipated that witnesses would "go south." Because the prior inconsistent statements were properly admitted, this Court properly determined that this claim lacked merit, and it fails.

Under Commonwealth v. Brady, a witness's prior inconsistent statement is admissible as substantive evidence as well as for impeachment purposes. 610 A.2d 66, 70 (Pa. 1986). In Commonwealth v. Lively, our Supreme Court found that a prior inconsistent statement is admissible as substantive evidence where it was given under circumstances that demonstrate reliability and trustworthiness. 610 A.2d at 7, 9 (Pa. 1992). The reliability of a prior inconsistent statement is based on: "(1) whether the statement is given under reliable circumstances; and (2) whether the declarant is available for cross-examination." Commonwealth v. Carmody, 799 A.2d 143, 148 (Pa.Super. 2002). With respect to reliability, a statement is reliable if it is given "under oath at a formal legal proceeding; or the statement had been reduced to a writing signed and adopted by the witness; or a statement that is a contemporaneous verbatim recording of the witness's statements." Lively, 610 A.2d at 10.

The Commonwealth's subjective expectation as to how a witness will testify is irrelevant. What matters for purposes of admissibility is the reliability and trustworthiness of the prior inconsistent statement. If reliability and trustworthiness is established, the prior statement is admissible as substantive evidence if the present testimony from the declarant is inconsistent with it. Nothing in petitioner's claim addresses the reliability or trustworthiness of the witnesses' prior inconsistent statements that were admitted at trial. Therefore, as the prior inconsistent statements were properly admitted under Brady/Lively, this Court properly dismissed this claim for lack of merit, and it fails.

30

17

**7. This Court erred by dismissing petitioner's claim that trial counsel was ineffective for failing to object on the grounds that petitioner's conviction was based solely on unsworn statements in violation of the Confrontation Clause.**

Petitioner's seventh claim is that trial counsel was ineffective for failing to object to petitioner's conviction, which was based on the unsworn testimony of "various witnesses." Here, again, petitioner is referring to the prior statements that witnesses gave to police and which were admitted at trial pursuant to Brady/Lively and their progeny. The fact that the prior statements were unsworn makes no difference under the Brady/Lively line of cases. What matters is that the witnesses were under oath when they testified in court. See Commonwealth v. Chmiel, 738 A.2d 406, 419 (Pa. 1999) (stating that the reasoning for the rule set forth in Brady/Lively was that "since the witness in question would testify in court, where she would be under oath and subject to cross-examination, the acknowledged dangers of hearsay were largely nonexistent."). Therefore, as every witness who testified at trial was sworn in when he or she testified, this Court properly determined that this claim lacked merit, and it fails.

**8. This Court erred by dismissing petitioner's claim that trial counsel was ineffective for failure to request an instruction on the element of "deliberation" in a case of first degree murder.**

Petitioner's eighth claim is that that trial counsel was ineffective for failing to request an instruction on the element of "deliberation" in a case of first degree murder. Because this Court did instruct on "deliberation," trial counsel was not ineffective for failing to request it, and this claim fails.

This Court's jury instruction was:

Murder of the first degree is a criminal homicide committed with a specific intent to kill. It is this specific intent to kill which distinguishes it from other degrees of murder.

An intentional killing is a killing by any kind of willful, *deliberate*, and premeditated act. Therefore, in order to find the defendant guilty of first degree murder, you must find that the killing was a willful, *deliberate* and premeditated act.
So what is meant by these words? If an intention to kill exists, then in the eyes of the law the killing is willful. If this intent is accompanied by such circumstances as show a mind

18

fully conscious of its own purpose it is *deliberate*. And if sufficient time has been afforded to enable the mind of the killer to fully frame the design to kill and to select the instrument or to frame the plan to carry this design into execution, it is premeditated.

N.T. 6/1/2009 at 118-19 (emphasis added).

Petitioner does not argue how this Court's specific intent instruction fails to define the element of "deliberation," nor does he provide the language which he believes should have been included in that instruction. In order to be eligible for relief under the PCRA, petitioner must "plead and prove" each claim; bare assertions of error, without more, are not enough. Liebel, 825 A.2d at 632. Furthermore, this Court's instruction closely tracked the language of the Pennsylvania Standard Suggested Jury Instruction on first degree murder:

> 1. The defendant has been charged with the offense of first-degree murder. First-degree murder is a murder in which the perpetrator has the specific intent to kill. To find the defendant guilty of this offense, you must find that the following three elements have been proven beyond a reasonable doubt:
>
> > *First*, that *[name of victim]* is dead;
> > *Second*, that the defendant killed [him] [her]; and
> > *Third*, that the defendant did so with the specific intent to kill and with malice.
>
> 2. A person has the specific intent to kill if he or she has a fully formed intent to kill and is conscious of his or her own intention. As my earlier definition of malice indicates, a killing by a person who has the specific intent to kill is a killing with malice [provided that it is also without [circumstances reducing the killing to voluntary manslaughter] [or] [any lawful justification or excuse]].
>
> [3. Stated differently, a killing is with specific intent to kill if it is [willful, deliberate, and premeditated] [by means of poison] [by lying in wait].]
> [4. The specific intent to kill [including the premeditation] needed for first-degree murder does not require planning or previous thought or any particular length of time. It can occur quickly. All that is necessary is that there be time enough so that the defendant can and does fully form an intent to kill and is conscious of that intention.]

Pa.S.S.J.I. (Crim) § 15.2502A (2005).

See Commonwealth v. Prosdocimo, 578 A.2d 1273, 1277 (Pa. 1990) (holding that a jury charge that closely tracked the language of the suggested standard jury instructions was accurate, adequate, and

19



sufficiently clear to inform the jury of the law applicable to the case). Therefore, this Court properly determined that this claim lacked merit, and it fails.[25]

**9. This Court erred by dismissing petitioner's claim that trial counsel was ineffective for failing to interview and call as a witness Anthony Woods.**

Petitioner's ninth claim is that this Court erred by dismissing petitioner's claim that trial counsel was ineffective for failing to interview and call as a witness Anthony Woods. Because petitioner failed to prove the witness was willing to testify at trial, and because this Court determined that Mr. Woods was not a credible witness and that his testimony would not have changed the outcome at trial, this claim fails.

In order to establish counsel ineffectiveness for failure to call a witness, petitioner must demonstrate (1) that the witness existed, (2) was available to testify on petitioner's behalf, (3) that counsel knew or should have known that the witness existed, (4) that the witness was willing to testify on petitioner's behalf, and, (5) that the absence of such testimony prejudiced petitioner. Commonwealth v. Brown, 767 A.2d 576, 581-82 (Pa.Super. 2001).

At the evidentiary hearing, when questioned regarding whether he would have testified on petitioner's behalf had trial counsel contacted him, Mr. Woods stated that, at the time of trial, he "didn't want no parts of nothing. I didn't want to be involved with nothing and nothing." N.T. 5/14/15 at 31. Mr. Woods also testified that he abides by a certain code of the streets:

| | |
|---|---|
| Mr. Woods: | Listen, ma'am, what you don't understand, I grew up in the streets. I don't want no parts. There are certain codes I just go by, bottom line. I don't want no parts. I don't want to be involved. |
| The Court: | Excuse me, what code? |
| Mr. Woods: | I just don't – I don't want to be involved with nothing. I don't want my name involved with nothing. |

Id. at 33.

---

[25] Petitioner also stated in his PCRA petition that the evidence presented by the Commonwealth was insufficient because there is no evidence of "'deliberation,' which is an elemental fact that must be proven to establish first degree murder." This claim, not cast in terms of ineffective assistance of counsel, has been waived.

20

As Mr. Woods himself stated at the evidentiary hearing that he wanted nothing to do with this matter at the time of trial, petitioner has failed to prove that the witness was willing and able to testify at the time of trial.

Additionally, as explained *supra*, this Court discredited the testimony of Mr. Woods, and found that his testimony would not have changed the outcome at trial.[26]

Therefore, this Court properly dismissed petitioner's claim that trial counsel was ineffective for failing to interview and call as a witness Anthony Woods, and this claim fails.

**10. Petitioner is entitled to relief based upon the cumulative effect of the errors.**

Petitioner's tenth claim is that this Court erred in dismissing his claim that he should be entitled to relief from his convictions based on the cumulative effect of the errors described in his PCRA petition. Because this Court properly determined that all of petitioner's claims failed, this claim regarding the cumulative effect of the errors fails as well. Therefore, this Court did not err in dismissing it.

It is well settled that "no number of failed claims may collectively warrant relief if they fail to do so individually." Commonwealth v. Tedford, 960 A.2d 1, 56 (Pa. 2008). It is only where instances of deficient performance are found that prejudice can be properly premised upon cumulative error. Commonwealth v. Johnson, 966 A.2d 523, 532 (Pa. 2009). Therefore, because instances of deficient performance were not found in this case, there was no cumulative effect of the errors, and this claim fails.

---

[26] See issue 3 at pp.8-11, *supra*.

21

For the foregoing reasons, this Court's dismissal of petitioner's PCRA claims should be affirmed.

BY THE COURT:

M. TERESA SARMINA          J.

22